*In re* LIC. CARLOS M. DÍAZ LAMOUTTE, LIC. LIBERTAD DÍAZ ORTIZ.

*Número:* MC-77-30      *Resuelto:* 31 de octubre de 1977

*Libertad Díaz Ortiz* y *Carlos M. Díaz Lamoutte,* por propio derecho.

PER CURIAM: El Procurador General de Puerto Rico investigó una queja presentada por la Sra. Agustina Dávila Vega y su esposo Generoso Vázquez Torres contra los abogados Carlos M. Díaz Lamoutte y Libertad Díaz Ortiz. Alega la quejosa que los mencionados abogados (1) representaron a su esposo lesionado y a ella en un caso de subrogación pre-

sentado por el Fondo del Seguro del Estado ante el Tribunal Superior sin que ni ella ni su esposo lo autorizaran; (2) acordaron una transacción en el caso sin la intervención de la quejosa y su esposo y (3) retuvieron para sí en concepto de honorarios de abogados el 60% de la suma obtenida por su dicho esposo lesionado sin intervención del tribunal para la fijación de honorarios.

El Procurador General obtuvo mediante declaraciones juradas las versiones de la quejosa y su esposo y las de los abogados querellados.

Los hechos son los siguientes. El trabajador Generoso Vázquez Torres sufrió un accidente del trabajo. Reclamó compensación del Fondo del Seguro del Estado, para sí y para la sociedad de gananciales compuesta con su esposa Agustina Dávila Vega. En los procedimientos ante el Fondo, en los que no intervinieron los abogados Díaz Lamoutte y Díaz Ortiz, el Fondo desembolsó la suma de $62,868.32 para sufragar los gastos de hospitalización, tratamiento, etc. y para satisfacer los beneficios que por ley correspondían al lesionado.

El Fondo instó entonces una acción de subrogación contra el causante del daño y su aseguradora bajo las disposiciones de la Sec. 32 del Título 11 de las Leyes de Puerto Rico Anotadas, para beneficio del Fondo y del lesionado y su esposa. El Fondo solicitaba $62,868.32 en subrogación para recobrar sus desembolsos, más la suma de $150,000 por los daños y perjuicios sufridos por el lesionado y $50,000 por los de su esposa. Dispone la citada Sec. 32 del Título 11 que "cualquier suma que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos en el caso se entregará al obrero o empleado lesionado o a sus beneficiarios con derecho a la misma." También dispone la referida Sec. 32 que no podrá llevarse a cabo transacción alguna entre el obrero lesionado y el tercero responsable después del Administrador del Fondo haber presentado su demanda a menos que se satisfagan

previamente los gastos incurridos por el Fondo en el caso; y no podrá dictarse sentencia, ni podrá aprobarse transacción alguna con relación a los derechos de las partes sin hacer reserva expresa del derecho del Fondo a reembolso de todos los gastos incurridos. Requiere además la Ley de Compensaciones por Accidentes del Trabajo que cualquier suma obtenida por el Fondo según queda dicho precedentemente, será ingresada en el Fondo a beneficio del grupo particular en que se clasificaba la ocupación o la industria en que se empleaba el obrero lesionado.

Surge del expediente que unos meses después de haberse presentado la subrogación los abogados querellados comparecieron en el pleito en representación de los reclamantes, con la autorización por escrito de la esposa del lesionado mediante un contrato de servicios en el que se convenía "que el importe de los honorarios de abogado será un 40% de cualquier suma que se obtenga mediante transacción y/o sentencia del Tribunal de la reclamación y causa de acción objeto del mencionado pleito."

El tribunal de instancia dictó sentencia por estipulación transaccional por la suma de $88,000 "como resarcimiento total por todos los daños sufridos por el demandante como consecuencia del accidente objeto de este litigio" de cuya cantidad el tribunal asignó al Fondo la suma reclamada en subrogación ascendente a $64,662.32, y al lesionado y su esposa la suma de $23,337.68. La sentencia se dictó sin especial condena en costas y honorarios de abogados.

La investigación realizada por el Procurador General en torno a la queja de la Sra. Dávila Vega y su esposo revela que los abogados querellados obtuvieron una autorización de aquéllos para representarlos en el caso de subrogación presentado por el Fondo y que también autorizaron la transacción acordada con el causante del daño y su compañía aseguradora. También quedó demostrado que los esposos Vázquez-Dávila convinieron con los Lcdos. Díaz Ortiz y Díaz Lamoutte

que el importe de los honorarios de abogados sería un 40% (¹) de cualquier suma que se obtuviera mediante transacción y/o sentencia del tribunal con respecto al pleito de daños y perjuicios presentado contra el causante del daño y su compañía aseguradora.

■ Procede resolver si el porcentaje de honorarios habría de computarse sobre la totalidad de la sentencia o sobre el exceso obtenido sobre la suma que por ley corresponde al Fondo. Según reza la Sec. 32 citada precedentemente el obrero tendrá derecho a cualquier suma recibida en exceso de los gastos incurridos por el Fondo, ya que por disposición expresa de ese mismo precepto legal el reembolso que corresponde al Fondo debe ser ingresado en dicha agencia gubernamental a beneficio del grupo en que se clasificaba al obrero lesionado. Y, por ello el Fondo estaba representado por sus abogados en la acción de subrogación que instara. Es evidente que el trabajador solamente tenía derecho a recibir la suma de $23,337.68 que ordenó el tribunal sentenciador. Y, sobre esa suma es que se han de computar los honorarios de los abogados contratados por el trabajador lesionado y su esposa. El 40% de dicha suma de $23,337.68 resulta ser la cantidad de $9,337.68. Habiendo cobrado los abogados querellados $14,000, procede que le devuelvan a los esposos Vázquez-Dávila el exceso cobrado ascendente a $4,662.32.

---

(¹) En el pasado surgían a menudo desavenencias entre abogado y cliente por motivo de los honorarios de abogados especialmente en los casos de daños y perjuicios. En ánimo de corregir esa situación la Asamblea Legislativa implementó legislación que fue aprobada en 1974 regulando los honorarios de abogados de naturaleza contingente en acciones de daños y perjuicios limitándolos al 33% del producto final de la sentencia, transacción o convenio, excepto en casos de menores o incapacitados que están limitados al 25% a menos que el tribunal autorice el cobro hasta no más del 33%. Esta reglamentación encuentra justificación, según expresa la exposición de motivos de la referida ley, por estar el ejercicio de la abogacía revestido de interés público y en aras de que esté accesible a toda persona una adecuada representación legal. Ley Núm. 9 de 8 de agosto de 1974.

■ El Canon 24 de los de Ética Profesional que establece los criterios para fijar el valor de los honorarios profesionales toma en consideración la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado. Y exige, además, que los honorarios profesionales deben ser acordados al inicio de la relación profesional y el acuerdo debe ser reducido a escrito.

■ En este caso los abogados querellados asumieron la representación profesional en 30 de diciembre de 1970 y no fue hasta un mes después que se firmó el convenio. Al fijar los honorarios a base del 40% de cualquier suma obtenida, los abogados no podían incluir suma otra alguna que no fuera la que se adjudicara para beneficio de sus clientes, que resultan ser los esposos reclamantes. Los abogados deben ser cuidadosos en la confección del contrato de servicios profesionales pues no deben dar lugar a dudas o a malas interpretaciones que luego causan fricción entre abogado y cliente. En los casos en que los honorarios sean contingentes deben procurar que sean razonables. Por ello el Canon 24 de los de Ética Profesional expresa la siguiente norma:

"La fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro."

*Se ordena a los abogados querellados que de los $14,000 que retuvieron como honorarios profesionales devuelvan a los esposos Vázquez-Dávila la suma de $4,662.32 que les fue cobrada en exceso de lo acordado contractualmente. Dicha suma es parte de la compensación que le fuera concedida a dichos esposos por el Tribunal Superior, Sala de San Juan, en el caso civil núm. 70-4625, Generoso Vázquez Torres et als. v. Industries Freight Services, Inc.*

El Juez Asociado Señor Rigau no intervino.