MARITZA PAGÁN DE JOGLAR y OTROS, demandantes y recurridos, *v.* FRANCISCO CRUZ VIERA, demandado y recurrente.

*Número:* RE-92-148          *Resuelto:* 22 de agosto de 1994

*Rubén Rivera Ramos*, abogado de la parte recurrente; *Milagros González Rodríguez* y *Enid Colón Jiménez*, abogadas de la parte recurrida.

## SENTENCIA

## I

*Hechos*

En 1976, el aquí demandado recurrente Francisco Cruz Viera, y las demandantes recurridas, las Lcdas. Luz de Borinquen Dávila y Maritza Pagán de Joglar, suscribieron un contrato de servicios profesionales. Mediante dicho contrato el señor Cruz Viera encomendó a las mencionadas licenciadas el trámite de una acción legal de daños y perjuicios.[1] En el contrato se estipuló que las licenciadas Dávila y Pagán de Joglar asumirían la representación legal del demandado recurrente "hasta la total terminación de los procedimientos" en el caso Civil Núm. CS-74-1260 sobre daños y perjuicios presentado ante el Tribunal Superior, Sala de Arecibo. Establecieron en el contrato que los honorarios profesionales contingentes serían "el 33 1/3%

---

[1] El señor Cruz Viera demandó a Myriam Gutiérrez Yantín, esposa de su padre, Francisco Cruz Reyes, por los daños que ésta le causara al agredirlo durante una discusión.

de [la] participación [del demandado recurrente] sobre cualquier sentencia que pueda recaer a [su] favor".

Cinco (5) años después, el 11 de febrero de 1981, el tribunal a quo declaró con lugar la demanda del señor Cruz Viera y condenó a la parte demandada, Sra. Myriam Gutiérrez Yantín, al pago de la suma de treinta y seis mil quinientos dólares ($36,500).(²) No conforme, la señora Gutiérrez Yantín solicitó revisión ante nos. El señor Cruz Viera fue representado, nuevamente, por las referidas abogadas.(³) Expedimos el auto y modificamos la sentencia dictada por el tribunal de instancia para eliminar la suma de cinco mil dólares ($5,000) otorgada a la Sra. Trinidad Colón, ex esposa del demandado recurrido, señor Cruz Viera.

Posteriormente, las licenciadas realizaron diversas gestiones profesionales con el fin de ejecutar la sentencia dictada en favor del recurrente. Dichas gestiones incluyeron, entre otras, la presentación de Solicitud de Procedimiento Suplementario para Ejecución de Sentencia; vista, ante tribunal a quo, sobre bienes de la deudora por sentencia; presentación de orden de embargo en el Registro de la Propiedad, y Recurso Gubernativo ante nuestro Foro.(⁴) A pe-

---

(²) La suma se desglosa de la forma siguiente:

| | |
|---|---|
| Pérdida de visión de ojo izquierdo del señor Cruz Viera | $20,000 |
| Sufrimientos físicos y angustias mentales del señor Cruz Viera | $10,000 |
| Sufrimientos físicos y angustias mentales de la Sra. Trinidad Colón esposa del señor Cruz Viera cuando ocurrieron los hechos | $5,000 |
| Honorarios de Abogado | $1,500 |
| Total | $36,500 |

Además, se condenó a la demandada, señora Gutiérrez Yantín, al pago de costas e intereses desde la radicación de la demanda.

(³) Pactaron verbalmente que el señor Viera Cruz les pagaría mil dólares ($1,000) más los gastos del litigio en revisión.

(⁴) El Registrador notificó faltas, entre éstas, que las fincas —objeto del embargo— eran propiedad ganancial por lo cual la acción debía ser dirigida contra ambos cónyuges. Resolvimos que cuando el cónyuge demandado no tiene bienes con qué responder o cuando éstos sean insuficientes, se puede repetir contra los bienes de la sociedad de gananciales siempre que se alegue y se pruebe que la sociedad de gananciales posee bienes para sufragar las cargas y obligaciones dispuestas en el Art. 1308 del Código Civil, 31 L.P.R.A. sec. 3661. En tal caso, se tiene que incluir al cónyuge inocente en la moción para ejecución de sentencia, citarlo o emplazarlo

sar de todas estas gestiones, no lograron cobrar la sentencia. Según las demandantes recurridas, el proceso de cobro se dificultó, pues el esposo de la deudora por sentencia no fue incluido en el proceso de ejecución, propiciando así el cobro de la misma, porque su representado deseaba evitar incomodar a su padre, el Sr. Francisco Cruz Reyes, ya que éste era un hombre anciano y enfermo.

En 1988 las demandantes recurridas, quienes alegan que siempre estuvieron dispuestas a continuar con los procedimientos para hacer efectiva la sentencia, tuvieron conocimiento de que el demandado recurrente había suscrito un contrato con su deudora para transigir el monto de la sentencia por la suma de quince mil dólares ($15,000), que debían ser pagados de la forma siguiente: mil dólares ($1,000) en el día que se firme la transacción y catorce mil dólares ($14,000) cuando se liquide totalmente la herencia de Don Francisco Cruz Reyes, de quien el demandado y su deudora son herederos. Con posterioridad a esto, las abogadas renunciaron a la representación legal del demandado recurrente y presentaron la acción para cobrar los honorarios profesionales que hoy revisamos.[5]

El 3 de marzo de 1992 el tribunal a quo dictó sentencia parcial condenando al demandado recurrente a pagar a la parte demandante recurrida diversas partidas por concepto de honorarios de abogado. Con relación a los honorarios contingentes pactados en el caso Civil Núm. CS-74-1260, el tribunal determinó que "los honorarios contingentes de un 33 1/3% pactados entre las partes de epígrafe ... [serían] computados en base a la sentencia y no a base la cantidad transigida por el demandado". Concluyó que la parte demandada recurrida debía pagar la

---

para proteger su derecho a ser oído antes de determinarse si procede el embargo de los bienes de la sociedad de gananciales. Véase *Cruz Viera v. Registrador*, 118 D.P.R. 911 (1987).

[5] La demanda, sobre cobro de dinero, incluía varias reclamaciones de sumas adeudadas en concepto de honorarios por diversas labores profesionales en las que las licenciadas representaron al demandado recurrente.

suma total de veintiún mil setecientos treinta y dos dólares con noventa centavos ($21,732.90) por la labor de las licenciadas, más los intereses legales.[6]

Inconforme con esta sentencia, el demandado Cruz Viera presentó ante nos un recurso de revisión planteando la comisión de dos (2) errores:

1. Si Francisco Cruz Viera después de esperar desde 1981, que se dictó sentencia hasta 1988, si él podía actuar por sí mismo y pactar la reducción de la Sentencia; que a la vez significa una reducción en lo que sus abogadas cobrarían y si el Tribunal erró en su fallo adverso, y creemos que fue error.

2. Si se puede quedando todavía pendiente de cobrar la Sentencia en Arecibo; si se puede radicar otra acción independiente en otra sala para el cobro de los honorarios, como ha ocurrido aquí, que se ha radicado otro caso en Bayamón abandonando el Foro de Origen y si el Tribunal erró al abrir puertas para que las demandantes puedan ir contra otros bienes del demandado lo que nos parece un error.

Decidimos revisar y expedimos el recurso.

## II

*El contrato de servicios profesionales de los abogados*

Los honorarios pactados entre un abogado y su cliente constituyen un contrato de arrendamiento de servicios profesionales. *Sánchez Acevedo v. E.L.A.*, 125 D.P.R. 432 (1990); *Nassar Rizek v. Hernández*, 123 D.P.R. 360, 361 (1989); *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161, 172 (1989). Este tipo de contrato, considerado de naturaleza sui géneris, tiene un interés público superior

---

[6] Dicha suma se desglosa así:

"1/3% [sic] del principal de la Sentencia dictada el 11 de febrero de 1981 bajo el caso 74–1260, incluyendo honorarios de abogado.

"1/3% [sic] de $31,500.          $10,500.00

"1/3% [sic] de los intereses acumulados ascendentes a $33,698.70 que dispone la misma sentencia bajo el caso CS 74–1260 desde mayo de 1974 hasta la fecha de esta Sentencia a marzo de 1992 a razón de 6% anual en vigor a la fecha del dictamen de la Sentencia ($31,500.00 ×.06 × 17.83 años).      $11,232.90

"Total Principal Adeudado        $21,732.90"

que puede trascender el interés exclusivo de las partes que lo pactan y está saturado de un elemento ético que lo hace substancialmente diferente del convenio común sobre arrendamiento de servicios. *Nassar Rizek v. Hernández,* supra, págs. 369–370; *López de Victoria v. Rodríguez,* 113 D.P.R. 265, 266 (1982).

Como en todo tipo de contrato, las partes que suscriben un contrato sobre honorarios de abogado pueden establecer los pactos, cláusulas y condiciones que estimen convenientes, *siempre que no sean contrarios a las leyes, a la moral ni al orden público.* Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372.

Al inicio de la relación profesional entre el abogado y su cliente se deben pactar los honorarios que han de ser cobrados. Es aconsejable que dicho acuerdo sea por escrito y, con la mayor claridad posible, se designe una cantidad fija o una fórmula para computarla o determinarla. Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; *Pérez v. Col. Cirujanos Dentistas de P.R.,* 131 D.P.R. 545 (1992); *Ramírez, Segal & Látimer v. Rojo Rigual,* supra, pág. 171; *Colón v. All Amer. Life & Cas. Co.,* 110 D.P.R. 772, 774 (1981); *In re Díaz Lamoutte,* 106 D.P.R. 450, 455 (1977). La profesión legal exige cuidado extremo en la preparación de los contratos de servicios. No deben ser ambiguos, dando lugar a dudas o a malas interpretaciones que causen fricciones entre el abogado y su cliente. *In re Díaz Lamoutte,* supra, pág. 455.

La discusión sobre los honorarios de los abogados tiene que fundamentarse en los cánones de ética profesional, que son los principios que rigen la conducta profesional de la clase togada. *Pérez v. Col. Cirujanos Dentistas de P.R.,* supra; *Ramírez, Segal & Látimer v. Rojo Rigual,* supra, pág. 161. Dichos cánones disponen que, al fijarse honorarios de abogado, debe tenerse en cuenta que "nuestra profesión es parte integrante de la administración de la justicia y no un mero negocio con fines de lucro". Canon 24 del Código de

Ética Profesional, *supra; Ramírez, Segal & Látimer v. Rojo Rigual*, supra, pág. 171; *In re Díaz Lamoutte*, supra.

El cumplimiento de los contratos sobre honorarios de abogado puede ser exigido, ante un tribunal, en una acción independiente del caso original. *Sánchez Acevedo v. E.L.A.*, supra, págs. 438–439. La parte con derecho a la remuneración puede reclamar ante cualquier corte de jurisdicción competente. Art. 1473 del Código Civil, 31 L.P.R.A. sec. 4111. Su exigibilidad no depende exclusivamente de lo pactado entre las partes, sino de que sus términos, en especial lo estipulado sobre la remuneración de los servicios, tienen que mantenerse dentro de los límites de los honorarios razonables y los que pueden ser considerados como "abuso y opresión de una clase privilegiada contra el consumidor de servicios". *López de Victoria v. Rodríguez*, supra, pág. 268.

El Canon 25 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, aconseja a los abogados que eviten controversias sobre honorarios. Únicamente deben presentarse acciones legales para reclamar honorarios profesionales en el caso de injusticias, imposiciones o fraudes contra el abogado que ha prestado servicios legales. *Colón v. All Amer. Life & Cas. Co.*, supra, pág. 774. No es hasta que el abogado termina su gestión profesional que puede entablar la acción en cobro de honorarios, en una acción independiente del caso que le dio origen. *Pérez v. Col. Cirujanos Dentistas de P.R.*, supra.

## III

*Los honorarios contingentes y las transacciones*

Respecto a los honorarios contingentes, hemos señalado que éstos no están reñidos con la ética profesional cuando se pactan por ser beneficiosos para el cliente o cuando éste lo prefiere después de haber sido informado sobre las consecuencias de los mismos. Canon 24 del Código de Ética Profesional, *supra; Pérez v. Col. Cirujanos Dentistas de*

*P.R.*, supra, pág. 554; *Ramírez, Segal & Látimer v. Rojo Rigual*, supra, pág. 171; *Colón v. All Amer. Life & Cas. Co.*, supra, pág. 776.

Los honorarios contingentes pactados deben ser razonables, a tono con los principios establecidos por el Canon 24 del Código de Ética Profesional, *supra*, sobre la fijación de honorarios:

> (1) El tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso;
> (2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes;
> (3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares;
> (4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado;
> (5) la contingencia o certeza de la compensación;
> (6) la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.

Además, éstos están sujetos a lo dispuesto en la Ley Núm. 9 de 8 de agosto de 1974 (4 L.P.R.A. sec. 742) que establece que los honorarios de naturaleza contingente en acciones de daños y perjuicios estarán limitados al treinta y tres por ciento (33%) del *producto final de la sentencia, transacción o convenio* o al veinticinco porciento (25%) en el caso de clientes menores de edad o incapacitados mentales.[7]

---

[7] A pesar de que dicha ley establece, en lo pertinente, que "[t]odo contrato o convenio con el fin de evadir la prohibición [antes señalada] será nulo y no tendrá valor alguno" (4 L.P.R.A. sec. 741) y ordena a los tribunales a velar por el estricto cumplimiento de lo establecido, en el caso de autos no existe prueba alguna de que el contrato de honorarios contingentes se hubiese hecho con el propósito de evadir esta prohibición. Ni las partes ni el foro de instancia hacen mención de que ésta fuese la intención de las partes al contratar. La inclusión del tercio de porciento adicional mas bien aparenta ser un desconocimiento u olvido de dicha disposición, no una

El abogado debe acatar los deseos de un cliente de transigir su pleito. Canon 24 del Código de Ética Profesional, *supra*. De hecho, aun una transacción hecha por un demandante, sin la intervención y sin el consentimiento de su abogado, es válida. Un abogado no tiene derecho a impedir que un caso se trance aunque esto afecte lo que cobraría como honorarios contingentes. Es altamente deseable mantener la paz entre los ciudadanos, procurando la pronta solución a las disputas, por lo que se deben fomentar las transacciones amistosas de las controversias. *Martínez v. Cintrón*, 60 D.P.R. 563 (1942).[8] Un pacto de honorarios contingentes no le da al abogado derecho a controlar el caso por encima de los deseos de su cliente. A pesar de que cuando se pactan honorarios contingentes el abogado es compensado si gana el caso y en proporción a la cuantía concedida en la sentencia una vez ésta se ejecute, hemos establecido que si se desiste del pleito por instrucciones del cliente, el abogado sólo tiene derecho a ser compensado a base del valor razonable de los servicios prestados. *Pérez v. Col. Cirujanos Dentistas de P.R.*, supra, pág. 556.[9]

Con relación a la sentencia en un caso, una vez se dicta, se notifica a las partes y se registra, se considera final, pero no se convierte en firme y ejecutable hasta tanto haya transcurrido el término para apelar o solicitar la revisión, según fuese el caso.[10] En el caso de sentencias que ordenen a una parte pagar una suma de dinero, surge una deuda por mandato judicial. *Rodríguez v. Martínez*, 68 D.P.R. 450, 453 (1948). Al trasladarse al ámbito de las obli-

---

intención de evadirla.

[8] Las Reglas de Evidencia también propician las transacciones entre las partes. Por ejemplo, véase la Regla 22(B) de Evidencia, 32 L.P.R.A. Ap. IV, sobre la inadmisibilidad de evidencia sobre ofertas o negocios de transacciones.

[9] También hemos indicado que "cuando en un mismo caso intervienen dos (2) o más abogados, el tribunal, al determinar a quién pertenecen o cómo se dividirán los honorarios contingentes, podrá tomar en consideración la labor realizada por cada uno de los abogados". *Sánchez Acevedo v. E.L.A.*, 125 D.P.R. 432, 439 (1990).

[10] Véase R. Hernández Colón, *Manual de derecho procesal civil*, 2da ed. rev., Hato Rey, Ed. Equity, 1981, págs. 268–273.

gaciones, la deuda por sentencia podría ser modificada y hasta condonada por el acreedor. Arts. 1110 y 1157 del Código Civil, 31 L.P.R.A. secs. 3151 y 3241. La ejecución de la sentencia podría ser desplegada voluntariamente por el que a ella está obligado o, por el contrario, cuando el obligado por sentencia no cumple, podría procederse a la ejecución forzosa.[11]

## IV

*Aplicación de la doctrina a los hechos del caso*

En el caso ante nuestra consideración, al pactar los honorarios contingentes, las abogadas estaban conscientes de que la ejecución de cualquier sentencia que se obtuviese sería difícil, pues su cliente no quería que se demandara a su padre. Esto les debió indicar que una transacción, en este caso, era una cosa probable. Ellas hicieron una serie de gestiones encaminadas a lograr el cobro de la sentencia, sin embargo, no tuvieron éxito. Así las cosas, el acreedor por sentencia, el señor Cruz Viera, transó su reclamación por una cantidad menor que la indicada en dicha sentencia. Con relación a esto, las abogadas demandantes insisten en que siempre estuvieron dispuestas a realizar gestiones de cobro y que, por lo tanto, tienen derecho a cobrar a base de la cantidad obtenida en la sentencia, no la cantidad por la cual se transó. No les asiste la razón.

Las demandantes en este caso fueron contratadas para que entendiesen en el caso *hasta su total terminación*. Esto incluía, claro está, la ejecución de la sentencia que, a final de cuentas, es lo que le interesaba a su cliente. Sabían que

---

[11] Hernández Colón, *op. cit.*, pág. 273. La Regla 51.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece un término de cinco (5) años para comenzar los trámites de la ejecución y, transcurridos éstos, sólo puede ejecutarse mediante autorización del tribunal, previa notificación a todas las partes envueltas en el litigio. Además, se puede entablar una acción independiente en cobro de sentencia, acción que prescribe a los quince (15) años, contados a partir de la fecha en que la sentencia quedó firme. *Padilla v. Vidal*, 71 D.P.R. 517, 526 (1950).

la ejecución sería difícil y debieron saber que era probable que no se pudiese cobrar la totalidad de la suma que se obtuviese por sentencia. Por este trabajo profesional pactaron honorarios contingentes. La ley permite que este tipo de honorarios se cobre sobre "el producto final de la sentencia, transacción o convenio", a base de un treinta y tres porciento (33%). Por lo tanto, las demandantes tenían derecho a que se le pagasen honorarios de abogado a base de un treinta y tres porciento (33%) sobre la suma por la cual el demandado transó su reclamación, no la suma adjudicada por sentencia y una vez su cliente hubiese recibido realmente el producto de la transacción.

Por todo lo antes expuesto, se dicta sentencia modificando la emitida por el tribunal de instancia para que ésta refleje que la cantidad que el demandado adeuda a las demandadas por honorarios contingentes es el treinta y tres porciento (33%) de la cantidad que éste transó con su deudora por sentencia. El demandado vendrá obligado a pagar los honorarios adeudados una vez le sea satisfecha la transacción acordada con su deudora.

Así lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García no intervino. El Juez Asociado Señor Rebollo López disintió con opinión escrita.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Disentimos de la sentencia que hoy emite una mayoría de los integrantes del Tribunal por razón de que somos de la opinión que la misma, no obstante dar la impresión de que resulta ser una justa tanto para el cliente como para el

abogado, *realmente discrimina contra éste último*. De hecho, y en nuestro criterio, la sentencia mayoritaria que hoy se emite contraviene, de manera indirecta, lo resuelto en *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 D.P.R. 545 (1992).[1]

No hay duda de que, como se señala en la sentencia mayoritaria, el cliente *siempre* tiene la "última palabra" sobre el curso a seguir en un caso. Esto es, el hecho de que exista un contrato de honorarios de abogado —*sea el mismo contingente o no*— no le brinda al abogado el poder decisional de controlar el caso sobre los deseos de su cliente.

Dicho de otra manera, el abogado viene en la obligación de obedecer las determinaciones que sobre el caso tome su cliente, incluyendo la de desistir del pleito radicado, transigir el mismo e, inclusive, hasta renunciar como abogado en dicho pleito. Ello, sin embargo, *no* significa que el abogado, que hasta ese momento le había dedicado tiempo y esfuerzo a dicho caso, quede totalmente desamparado por la decisión que tome el cliente y que no pueda cobrar honorarios razonables por sus servicios.

Esa precisamente fue la situación a la cual nos enfrentamos en *Pérez v. Col. Cirujanos Dentistas de P.R.*, ante. En dicho caso, el cliente decidió *desistir* del pleito que le había encomendado radicar a su abogado; pleito en relación con el cual había pactado honorarios contingentes. Resolvimos que, a pesar de que el cliente tenía derecho a desistir de la acción radicada y de que el abogado venía en la obligación de aceptar dicha decisión, éste tenía derecho a ser compensado a base del valor razonable de los servicios que había prestado; ello independientemente del hecho que, al *desistir* del pleito, el cliente no recibiría dinero alguno.

En el presente caso no se trata de un desistimiento. Por el contrario, nos enfrentamos a un pleito de daños y per-

---

[1] 92 J.T.S. 124.

juicios, en el cual igualmente se pactaron honorarios contingentes, que culminó en sentencia, la cual advino final y firme. El demandante, luego de unos trámites infructuosos de sus abogados sobre ejecución de sentencia, decide *transigir* el caso, *sin el conocimiento de sus abogados*, por una suma de dinero menor a la obtenida por sentencia.[2] *No* hay duda de que dicho demandante tenía el derecho a así hacerlo. Ese derecho que le asiste a la parte demandante, sin embargo, *no* significa que sus abogados, los cuales le dedicaron grandes esfuerzos y tiempo al caso, queden desamparados y sujetos *únicamente* a percibir, de la suma de dinero por la cual el demandante *unilateralmente* transigió el caso, el por ciento originalmente pactado.

Así lo resuelve el Tribunal en el día de hoy. *No* estamos de acuerdo. Ello, por varias razones. En *primer lugar*, y al igual que en *Pérez v. Col. Cirujanos Dentistas de P.R.*, ante, el hecho de que le reconozcamos al cliente el derecho de controlar el caso, *no* impide que el abogado cobre una suma razonable por los servicios que prestó. Esto es, el hecho de que el cliente tenga el derecho absoluto a *transigir* el caso por la suma de dinero que a él le parezca, no impide que al abogado se le pague una suma de dinero razonable por los servicios que le prestó a ese cliente; sobre todo, en situaciones en que se pueda demostrar que la suma por la cual el cliente unilateralmente transige el caso es una irrazonable o irrisoria.

*Ello nos lleva al segundo fundamento.* El establecimiento de la *norma automática* que hoy adopta el Tribunal en el presente caso, *se presta a que se cometa fraude contra*

---

[2] Debe mantenerse presente lo establecido por la Regla 51.1 de las Reglas de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) a los efectos de que:

"La parte a cuyo favor se dicte sentencia, podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, *en cualquier tiempo dentro de cinco (5) años de ser firme la misma. Expirado dicho término, podrá ejecutarse la sentencia mediante autorización del tribunal a moción de parte y previa notificación a todas las partes.* Si después de registrada la sentencia se suspendiere la ejecución de la misma por una orden o sentencia del tribunal, o por efecto de ley, el tiempo durante el cual ha sido suspendida dicha ejecución deberá excluirse del cómputo de los cinco (5) años durante los cuales podrá expedirse el mandamiento de ejecución." (Énfasis suplido.)

*el abogado.* Conforme a la norma que hoy se establece, nada impide que un cliente inescrupuloso "formalmente" acceda, con la parte demandada, a transigir el caso por una suma nominal —de la cual, conforme la sentencia hoy emitida, se computaría el por ciento pactado con su abogado— y recibir, por "debajo de la mesa", una suma de dinero adicional, de la cual no le tendría que pagar nada a su abogado.

En *tercer término*, ya en cuanto al caso específico hoy ante nuestra atención, las consideraciones particulares, *de índole personal*, que pudiera tener el demandante con la demandada —relación de hijo y madrastra— y que posiblemente le indujeron a transigir el caso por una suma menor a la obtenida por sentencia, *no* deben perjudicar a los abogados de éste. Dichos abogados le dedicaron tiempo y esfuerzo al caso; tienen derecho a cobrar una suma razonable por concepto de honorarios.

En resumen, la norma *automática e inflexible* que adopta hoy el Tribunal —a los efectos de que transigido, *de manera unilateral* por el cliente un caso, su abogado *únicamente* tiene derecho a cobrar, de la suma de dinero por la cual el cliente transigió el caso, el por ciento originalmente pactado en forma contingente— perjudica, *innecesariamente*, al abogado. No hay razón para ello. A dicha norma se le pueden adicionar unas *garantías* en protección de los derechos de los abogados. Es por ello que disentimos.