William E. Melendez Menendez ("the plaintiff") appeals from a summary judgment entered by the Madison Circuit Court in his action, brought under Alabama's version of the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), to register a judgment entered in his favor by a court of the Commonwealth of Puerto Rico on an unpaid-wage claim against COLSA, Inc. ("the defendant"). We reverse and remand.
In March 1992, the plaintiff, then a senior programmer for the defendant at the Roosevelt Roads United States Naval Base in Puerto Rico, brought an action in the San Juan district court, claiming that the defendant owed him certain sums for overtime work pursuant to the laws of Puerto Rico. The defendant appeared in that action, but did not answer the complaint, and the district court entered a judgment in August 1992 in favor of the plaintiff, awarding him $29,082.24 in overtime pay and $29,082.24 as a penalty, plus interest at an annual rate of 7.5 percent and an attorney fee of $5,000. The defendant did not appeal from that judgment.
In March 1996, the defendant initiated in the Court of First Instance of Puerto Rico, Superior Court of San Juan, a collateral attack on the August 1992 judgment, asking that court to vacate the district court's judgment because, it said, that court was without subject-matter jurisdiction to render the judgment. The parties filed cross-motions for a summary judgment in the collateral proceeding; subsequently, in August 1997, the Court of First Instance granted the plaintiff's summary-judgment motion and denied the defendant's summary-judgment motion. The case was appealed to the Circuit Court of Appeals, San Juan Regional Circuit; in April 1998, that court affirmed the August 1997 summary judgment entered by the Court of First Instance. In November 1998, the Supreme Court of Puerto Rico issued an order denying review of the appellate court's decision.
In May 2001, the plaintiff filed his action in Madison County, seeking to register the August 1992 judgment. The defendant filed a motion to dismiss, contending, among other things, that the San Juan district court did not have subject-matter jurisdiction to enter the August 1992 judgment and that a Puerto Rican rule of civil procedure barred any attempt to enforce a judgment after five years had elapsed from the date of its entry. The parties submitted extensive legal memoranda in support of their respective positions. On October 31, 2001, the trial court, construing the defendant's motion as a motion for a summary judgment, entered a summary judgment in favor of the defendant, agreeing with its contentions regarding subject-matter jurisdiction and the timeliness of the plaintiff's enforcement proceeding. The plaintiff's appeal to the Alabama Supreme Court was transferred to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Under Rule 56(c)(3), Ala.R.Civ.P., a trial court is authorized to enter a summary judgment when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Because the pertinent facts in these cases are undisputed, we review the trial court's application of law to those facts to determine whether the defendant was entitled to a judgment as a matter of law. See Carpenterv. Davis, 688 So.2d 256, 258 (Ala. 1997). We review the trial court's judgment under a de novo standard. See Hipps v. Lauderdale County Bd. ofEduc., 631 So.2d 1023, 1025 (Ala.Civ.App. 1993). *Page 771 
The UEFJA provides a mechanism for the domestication of a "foreign judgment" through its filing in the office of any circuit-court clerk in Alabama. See § 6-9-232, Ala. Code 1975. The UEFJA defines "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." Ala. Code 1975, § 6-9-231. While Puerto Rico is not a "state" such that the Full Faith and Credit Clause of Article Four, § 1, of the United States Constitution would be directly applicable to judicial proceedings of Puerto Rican courts, Congress has provided that "[t]he records and judicial proceedings of any court of any [U.S.] State, Territory or Possession" "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of [the] State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. This statute requires Alabama courts to afford full faith and credit to judicial proceedings of U.S. territories, such as Puerto Rico. See Feore v. Feore, 627 So.2d 411,413-14 (Ala.Civ.App. 1993) (affording full faith and credit, pursuant to28 U.S.C. § 1738, to a divorce judgment entered by Guam court).
While Alabama courts are generally required to give a judgment entitled to full faith and credit at least the res judicata effect accorded in the rendering court's jurisdiction, Alabama courts are permitted to inquire into the jurisdiction of the rendering court. Feore, 627 So.2d at 413;accord, Republic Nat'l Bank v. Howell, 456 So.2d 58, 59 (Ala. 1984). However, the appropriate inquiry is limited to ascertaining "`(1) whether the issue of jurisdiction was fully and fairly litigated by the foreign court and (2) whether the issue of jurisdiction was finally decided by the foreign court.'" Feore, 627 So.2d at 413 (quoting Alston Elec. SupplyCo. v. Alabama Elec. Wholesalers, Inc., 586 So.2d 10, 11 (Ala.Civ.App. 1991)). In short, if jurisdiction is not lacking, an Alabama court must give full faith and credit to a foreign judgment under the UEFJA. Feore,627 So.2d at 413. The burden is on a party challenging the validity of the foreign judgment to assert and demonstrate the rendering court's lack of jurisdiction. Greene v. Connelly, 628 So.2d 346, 351 (Ala. 1993).
In this case, the defendant must demonstrate not only the lack of jurisdiction of the San Juan district court to enter its August 1992 judgment awarding the plaintiff overtime pay, a penalty, interest, and an attorney fee, in order to prevail. The defendant must also demonstrate the lack of jurisdiction of the Court of First Instance of Puerto Rico, Superior Court of San Juan, which entered a judgment in August 1997 concluding that the August 1992 judgment was within the San Juan district court's subject-matter jurisdiction, and of the Circuit Court of Appeals, San Juan Regional Circuit, which affirmed the August 1997 judgment.
The defendant contends that the Puerto Rican courts lacked subject-matter jurisdiction to decide the plaintiff's claim against the defendant because the plaintiff's claim arose from transactions on the Roosevelt Roads Naval Base, which, it argues, is a federal "enclave" within Puerto Rico, and the plaintiff sought relief under Puerto Rican employment law. We believe this contention conflates the concepts of subject-matter jurisdiction, i.e., the power of a court to grant relief, and choice of law, i.e., the legal principles that must be applied by a court having jurisdiction in deciding whether to grant the requested relief. Under Feore and other Alabama cases, only the subject-matter jurisdiction of a foreign court may be examined. See Feore,627 So.2d at 413; Great Am. Lines, Inc. v. Burks, 631 So.2d 907, 908 (Ala. 1993) *Page 772 
(holding that Alabama law prohibits inquiry into the merits of a foreign judgment a party seeks to domesticate); Forbes v. Davis, 187 Ala. 71,77, 65 So. 516, 517 (1914) (holding that nonjurisdictional irregularities in proceedings leading up to a duly authenticated judgment cannot impeach or qualify that judgment); see generally Restatement (Second) of Conflictof Laws § 106 (1971) (stating that errors of fact or law will not bar extraterritorial enforcement of a judgment entered within the rendering court's jurisdiction).
We now turn to the jurisdiction of Puerto Rican courts to decide controversies arising on the Roosevelt Roads Naval Base. Despite the defendant's contentions to the contrary, Puerto Rican courts have held that they have jurisdiction to decide civil controversies such as that existing between the plaintiff and the defendant. Although noting that the United States government has exclusive legislative jurisdiction over Roosevelt Roads Naval Base, the Supreme Court of Puerto Rico unanimously held in Roberts v. USO Council of Puerto Rico, 145 P.R. Dec. 58 (1998), that the courts of Puerto Rico have full jurisdiction to entertain civil claims arising in federal lands located in Puerto Rico, including Roosevelt Roads Naval Base.[1] To like effect is Quiles Viuda de Fontev. COLSA, Inc., 147 P.R. Dec. 360 (1999), in which the Puerto Rico Supreme Court concluded that a Puerto Rico trial court had jurisdiction to hear a civil action against the defendant in this case arising from allegedly negligent administration of a group-life-insurance plan.Accord, Sopena v. Colejon Corp., 920 F. Supp. 259, 264-65 (D.P.R. 1996) (recognizing that Puerto Rican and federal courts would have concurrent jurisdiction over overtime-wage claims asserted by employees at Roosevelt Roads Naval Base); Lebron Diaz v. General Sec. Servs. Corp.,93 F. Supp.2d 129, 135 (D.P.R. 2000) (stating that "[n]o invisible wall surrounds federal enclaves generally, or the federal court in Puerto Rico specifically, necessarily putting [such an enclave] beyond the reach of a local court").
In addition to the existence of precedent favoring the San Juan district court's exercise of subject-matter jurisdiction over the plaintiff's claim against the defendant, the precise question of subject-matter jurisdiction has been fully and fairly litigated in the courts of Puerto Rico. The Court of First Instance denied the defendant's collateral attack on the underlying August 1992 judgment, citing Nolla,Galib Cia. v. Superior Court, 93 P.R.R. 630 (1966), for the proposition that Puerto Rico courts have jurisdiction over wage claims filed by workers and employees working at a United States naval base. The Court of First Instance's judgment was affirmed by the Circuit Court of Appeals, which cited both Nolla, Galib Cia. and Roberts in support of its conclusion that the San Juan district court properly took jurisdiction of the plaintiff's wage claim in this case. We conclude that the issue of the San Juan district court's subject-matter jurisdiction has been fully and fairly litigated, and that that issue has been finally decided in favor of the validity of the judgment that the plaintiff seeks to register.
The defendant, however, complains that the Puerto Rican judgment relies upon Puerto Rican substantive labor law, rather than upon potentially applicable federal labor law such as the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. There is, indeed, authority for the proposition that an employee cannot obtain *Page 773 
remedies under Puerto Rico wage-and-hour laws in an action arising from labor performed on federal enclaves in Puerto Rico, such as Roosevelt Roads Naval Base. See, e.g., Koren v. Martin Marietta Servs., Inc.,997 F. Supp. 196 (D.P.R. 1998). Such authority tends to undermine the substantive correctness of the San Juan district court's judgment — the plaintiff's complaint sought relief under Puerto Rican wage-and-hour laws, and the judgment in his favor awarded him the relief sought in the complaint. However, as we have indicated, the merits of the Puerto Rico courts' judgments are not, under Feore, Great AmericanLines, Forbes, and the Restatement, within the proper scope of inquiry of a court considering whether a foreign judgment may be registered in Alabama under the UEFJA. The defendant appeared in the action in the San Juan district court and could have asserted its substantive defenses to the plaintiff's claims; moreover, it could have appealed from the final judgment of that court to the appropriate appellate tribunal in Puerto Rico. The defendant did neither, and it is clearly not the place of an Alabama court to second-guess the substantive correctness of the judgment entered in the plaintiff's favor at this late date.
The defendant further contends that the judgment entered by the San Juan district court in August 1992 is no longer enforceable in Puerto Rico, and that for that reason, the judgment can no longer be registered in Alabama. We disagree. While Rule 51.1 of the Puerto Rico Rules of Civil Procedure provides that a party may "execute" a judgment by filing a petition in the rendering court within five years of the judgment's entry, after which the party must obtain leave of the rendering court to file such a petition, that provision does not amount to a rule of prescription barring revivor or enforcement of the judgment by another court. Rather, a Puerto Rican statute, 31 P.R. Laws Ann. § 5294, provides for a 15-year period during which a judgment debt may be collected by a separate action. The Puerto Rico Supreme Court, the United States District Court for the District of Puerto Rico, and the San Juan Regional Circuit Court of Appeals have each held that the 15-year period, rather than the 5-year period, applies to actions to collect judgments. Padilla v. Vidal, 71 P.R.R. 483, 491-92 (1950); FDIC v.Talleres Industriales de Puerto Rico, Civ. No. 87-1484 (JP) (D.P.R. Oct. 18, 1994) (not reported in F. Supp.); Pagan de Joglar v. Cruz Viera, 136 P.R. Dec. 750, 758 (1994); Galaxy Inv., Inc., v. Reus, [No. 92-13223(603)] ___ P.R. Dec. ___ (P.R. Cir. Ct. App. Mar. 21, 2002).
Thus, we conclude that a separate collection action against the defendant to enforce the San Juan district court's judgment would have been timely if filed in a Puerto Rican court. Moreover, the plaintiff's action to domesticate the Puerto Rico judgment was filed well within Alabama's 20-year limitation period for bringing an action on a judgment of any court of any state or territory of the United States. See
§ 6-2-32, Ala. Code 1975. The trial court therefore erred in entering a summary judgment in favor of the defendant in the plaintiff's action, brought under the UEFJA, to register the judgment of the San Juan district court. The trial court's judgment is reversed, and the cause is remanded for further proceedings under the UEFJA.
REVERSED AND REMANDED.
Yates, P.J., and Thompson and Pittman, JJ., concur.
[1] In the original Spanish, "tienen plena jurisdicci" para entender enreclamaciones civiles que surjan en terrenos federales localizados en nuestra Isla." 145 P.R. Dec. at 72. *Page 774