PER CURIAM:
I
Relatamos los acontecimientos según surgen de las determinaciones de hecho del Informe del Comisionado Especial y del expediente.
El Ledo. Rafael A. Rivera Rivera (licenciado Rivera Rivera o querellado) fue admitido al ejercicio de la abogacía y del notariado los días 20 de enero y 2 de agosto de 1993, respectivamente. El 16 de junio de 1994 el licenciado Rivera Rivera cesó voluntariamente del ejercicio de la notaría. Posteriormente, éste solicitó ejercer nuevamente el notariado, y el 16 de enero de 1998 fue readmitido a ejercer la notaría.
*944 El 20 de febrero de 1998 el licenciado Rivera Rivera suscribió un contrato con el Frente Unido de Policías Organizados de Puerto Rico (la FUPO) mediante el cual se comprometió a prestar servicios legales a los miembros de esa organización a base de unas tarifas preestablecidas en dicho contrato, las cuales serían pagadas directamente por la FUPO.
El 3 de diciembre de 2001, Grissell Rojas Martell (Rojas Martell o quejosa) visitó la oficina del licenciado Rivera Rivera para solicitar sus servicios, ya que su hermano, Leopoldo Roldán Martell, quien era policía municipal y socio de la FUPO, había sido acusado de intento de robo y tentativa de asesinato. Rojas Martell conoció del licenciado Rivera Rivera a través de un folleto de la FUPO que contenía una lista de los abogados contratados por ésta para rendir servicios a sus socios.
El contrato entre la FUPO y el querellado claramente establecía que las partes “t\enían\ convenido un contrato mediante el cual el Abogado prestarla] servicios legales a los socios según el plan de tarifas de la Parte “F” de es[e] contrato”. Apéndice de la Moción en cumplimiento de or-den, pág. 2. Por su parte, la parte “F” disponía que en los casos criminales de delito grave los honorarios serían $1,500 para casos de tentativa de asesinato y $1,000 para casos de robo. No obstante lo anterior, el licenciado Rivera Rivera le indicó a la quejosa que no aceptaría el caso bajo el contrato de la FUPO, sino que sólo lo aceptaría como un caso privado por la cantidad de $10,000. Le indicó también que él podía reclamarle a la FUPO la cantidad de $2,000 aproximadamente, y que de esa manera ella tendría que pagar únicamente los restantes $8,000. La señora Rojas Martell aceptó lo que el licenciado Rivera Rivera le exigió y le adelantó el pago de $4,500. Posteriormente, Roldán Mar-tell abonó a la deuda $1,000 adicionales, cantidad que pagó personalmente al querellado.
Durante el transcurso de los siguientes dos meses, el licenciado Rivera Rivera realizó unas gestiones en beneficio de su cliente, por las cuales facturó a la FUPO $600. *945 Surge del expediente que el querellado le cobró $100 a la FUPO por haber comparecido a una vista en la cual se solicitó una rebaja de la fianza impuesta y $500 por su alegada comparecencia a la vista preliminar. Sin embargo, del expediente surge que la vista preliminar no se llegó a celebrar. Esto, ya que los primeros dos señalamientos fueron pospuestos y el imputado se suicidó en una fecha anterior a aquella para la cual estaba pautada la celebración de la vista preliminar. Como consecuencia de este trágico desenlace, el licenciado Rivera Rivera no realizó ninguna gestión ulterior en este caso.
El 15 de febrero de 2002 Rojas Martell acudió ante este Tribunal y presentó una queja en contra del licenciado Rivera Rivera en la cual consignó:
El 13 de febrero de 2002, yo fui [a la] FUPO para informar la inco[n]formidad por el servicio ofrecido por el Licenciado y para orientarme acerca de los pagos ya hechos por m[í]. Fue entonces cuando Rafael Morales, Vice Presidente de [la] FUPO, me informó que ya el Licenciado estaba facturando a [la] FUPO y que [é]l no podía cobrarme a m[í]. Apéndice de la Moción en oposición al informe del comisionado, pág. 9.
El 19 de julio de 2002 la Oficina del Procurador General presentó un informe para someter a la consideración de este Tribunal la conducta en la cual incurrió el licenciado Rivera Rivera en su gestión profesional. Mediante una resolución notificada el 19 de marzo de 2003, le ordenamos al Procurador General que presentara una querella con los cargos correspondientes para continuar con el procedimiento disciplinario. Cumpliendo con su encomienda, el 9 de mayo de 2003 el Procurador General presentó una querella en la que formuló un cargo en contra del licenciado Rivera Rivera porque violentó el Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. EX. Este canon dispone, entre otras cosas, que la fijación de honorarios profesionales se debe regir siempre por el principio de que la profesión de la abogacía es parte integrante de la administración de la justicia y no un mero negocio con fines de lucro.
Por su parte, el licenciado Rivera Rivera contestó la *946 querella referida el 24 de junio de 2003. En su contestación alegó que aun cuando firmó el contrato con la FUPO, en el cual se comprometió a brindar servicios legales a los socios de dicha organización por una tarifa predeterminada, él conservaba la prerrogativa de no aceptar casos bajo el contrato referido y sólo aceptarlos si lo contrataban bajo su práctica privada, cobrando los honorarios que él entendiera razonables. Sustentó su aseveración con una carta que, a petición suya, la emitieron tres miembros de la nueva directiva de la FUPO.
El 30 de junio de 2003 designamos al ex juez del otrora Tribunal de Circuito de Apelaciones, Antonio J. Amadeo Murga, para que en presencia de las partes y en calidad de Comisionado Especial recibiera prueba y rindiera un informe con sus determinaciones de hecho y recomendaciones que estimase pertinentes. Finalizada su encomienda, el 30 de septiembre de 2004, el Comisionado Especial presentó el informe requerido. Avaló la contención del querellado, por lo que recomendó el archivo de la querella.
El Procurador General presentó posteriormente una Moción en Oposición al Informe del Comisionado. En ésta, en esencia, el Procurador General expresó que el querellado no podía denegarle cubierta a un policía para así cobrarle a la FUPO la cuantía de honorarios pactada y, además, facturarle una cantidad adicional directamente al policía representado.
Pasamos a resolver.
II
De entrada debemos señalar que este Tribunal no está obligado a aceptar el informe del Comisionado Especial, por lo que puede adoptarlo, modificarlo e, incluso, rechazarlo. In re López de Victoria Brás, 135 D.P.R. 688 (1994); In re Soto López, 135 D.P.R. 642 (1994).
Consistentemente hemos enfatizado que al iniciar una gestión profesional, todo letrado debe tener presente el *947 Canon 24 del Código de Ética Profesional, supra, ya que éste contiene las normas generales que deben regir la fijación de honorarios de abogado. A esos efectos, dicho canon expresamente indica que ésta deberá regirse siempre por el principio deontológico de que la profesión legal es parte de la administración de la justicia y no un mero negocio con fines de lucro. Véase, además, In re Díaz Lamoutte, 106 D.P.R. 450 (1977). Veamos entonces si el licenciado Rivera Rivera infringió el canon referido.
En el caso de autos no existe controversia alguna sobre que el 20 de febrero de 1998 el licenciado Rivera Rivera firmó un contrato de servicios profesionales con la FUPO para brindarles servicios legales a los socios de ésta según las tarifas acordadas. El monto de honorarios puede limitarse de antemano por disposición de ley (In re Sánchez, 70 D.P.R. 905 (1950)), o por el propio abogado que acuerda prestar sus servicios por cantidades menores a las que se cobran ordinariamente a cambio de recibir un mayor número de casos sobre el mismo asunto de alguna fuente, como sucedía aquí con el acuerdo con la FUPO. Tampoco existe controversia sobre el hecho de que el hermano de la quejosa, Roldán Martell, era socio activo de la FUPO, por lo que tenía derecho a utilizar los servicios legales que proveía la organización.
La cláusula “B” del contrato firmado por el querellado disponía, expresamente, que “el Abogado prestará servicios legales a los socios según el plan de tarifas en la parte ‘F’ de este contrato”. (Énfasis suplido.) Como se puede observar, la cláusula transcrita no contemplaba que el abogado contratado tendría la prerrogativa de decidir si prestar o no los servicios legales, sino que la misma creaba un mandato al abogado contratado para proveer los servicios pactados.
Por otro lado, la referida cláusula también establecía claramente la forma en la cual el abogado cobraría por sus servicios y la cantidad que tendría derecho a recibir por ellos. La parte “F” del contrato contenía una lista de los diferentes servicios que prestaría el abogado contratado y *948 la tarifa que la FUPO pagaría por cada uno de ellos. En lo aquí pertinente, el contrato establecía que por casos de tentativa de asesinato y casos de robo, se pagaría $1,500 y $1,000, respectivamente.
En vista de lo anterior, no existe duda sobre la cantidad que el querellado podía cobrar por cada uno de sus servicios, cantidad que pagaría la FUPO sin que se permita cobrarle un monto adicional al cliente directamente. Sin embargo, a pesar de que según el contrato, el licenciado Rivera Rivera estaba obligado a cobrar $2,500, éste le indicó a Rojas Martell que no aceptaría el caso de su hermano bajo el contrato de la FUPO, sino como un caso privado, para así cobrar $10,000. De esta manera, pretendió burlar su propio compromiso contractual, excediendo así la tarifa aplicable y facturando a dos personas diferentes por un mismo servicio.
No obstante lo anterior, el Comisionado Especial concluyó erróneamente en su informe que de la prueba admitida no surgía violación al citado Canon 24 del Código de Etica Profesional por parte del querellado, por lo que recomendó el archivo de la queja. De una lectura del informe referido se deduce que el Comisionado Especial basó su recomendación, esencialmente, en la opinión contenida en una carta suscrita por los miembros de la nueva Directiva de la FUPO. La misiva referida, la cual validaba la actuación del querellado, fue preparada a petición suya.
La opinión contenida en la carta, la cual tiene fecha de 19 de mayo de 2003, es irrelevante a la controversia de autos. Esta no puede ir por encima de lo que establece claramente el contrato firmado por el querellado, ya que sostener lo contrario implicaría que un abogado podría evadir la jurisdicción disciplinaria de este Tribunal con meramente obtener un comunicado como el de autos que valide sus actuaciones. Es norma conocida que cuando los términos de un contrato son claros, no cabe recurrir a reglas de interpretación, por lo que resulta improcedente *949 examinar actos posteriores a su otorgamiento como técnica de interpretación. Trinidad v. Chade, 153 D.P.R. 280 (2001). Además, los hechos en los que se fundamenta la queja de autos ocurrieron a finales del 2001 y principios del 2002, cuando los señores que firmaron la carta como miembros de la nueva directiva de la FUPO no formaban parte de ésta. Más relevante aún es el hecho de que previo a la fecha en que ocurrieron los acontecimientos de este caso, el señor Rafael Morales, quien fungía como vicepresidente de la FUPO, había emitido un segundo recordatorio escrito, en el cual hizo constar lo siguiente:
Por este medio quiero traerle a su atención que hemos estado recibiendo llamadas de socios con relación a facturaciones por casos que están cubiertos por el contrato de servicios legales. Como es de su conocimiento [,] todo aquello que está cubierto por el contrato de servicios, el cual fue aceptado por usted\f\ no puede ser cobrado a nuestros socios. Le agradeceré que cuando tenga alguna duda en cuanto al costo y cubierta de los servicios nos llamen y con gusto le aclararemos sus dudas. (Enfasis en el original.) Apéndice de la Moción en cumplimiento de or-den, pág. 8.
Todos los abogados contratados por la FUPO, incluso el licenciado Rivera Rivera, recibieron copia del recordatorio referido.
El querellado, como miembro de la profesión legal, debió tener en cuenta al fijar sus honorarios su obligación contractual y, más importante todavía, su rol como parte integrante de la administración de la justicia, pues la profesión legal no es un mero negocio con fines de lucro. Resulta altamente impropio que el querellado pretenda cobrar a dos personas diferentes por el mismo trabajo, máxime cuando ya existía un contrato que le facultaba para cobrar solamente a la FUPO, estando así impedido de cobrarle también al socio de ésta. Entendemos que esta actuación denota un afán de lucro incompatible con el citado Canon 24 del Código de Ética Profesional.
*950 HH 1—4
Por todo lo anterior, resolvemos que el licenciado Rivera Rivera violó el Canon 24 del Código de Etica Profesional. Se le amonesta por tal conducta y se le ordena devolver a los familiares de Roldán Martell los $5,500 cobrados en exceso a lo convenido con la FUPO y por una labor que no llegó a realizarse. El Ledo. Rafael A. Rivera Rivera deberá realizar el pago ordenado dentro del transcurso de los próximos tres meses a partir de la notificación de la sentencia del caso de autos y acreditar dicho pago ante nos, so pena de suspensión del ejercicio profesional.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Fiol Matta sólo concurrió con el resultado porque considera que la conducta del abogado amerita una sanción más severa que una mera amonestación. Los Jueces Asociados Señores Rebollo López y Rivera Pérez no intervinieron.