*339 TEXTO COMPLETO DE LA SENTENCIA
Mediante recurso de apelación comparecen ante este foro apelativo Enrique Rosario Robles, et al. (en lo sucesivo demandados-apelantes). Nos solicitan la revisión de la Sentencia emitida el 13 de agosto de 2004 y notificada el 19 de agosto de 2004.
La Sentencia apelada declaró Con Lugar la demanda sobre incumplimiento de contrato, cobro de dinero y daños y perjuicios, le impuso a los demandados-apelantes el pago de un millón seiscientos setenta y nueve mil, ochocientos sesenta y nueve dólares con diez centavos ($1,679,869.10). Además, declaró Sin Lugar la reconvención interpuesta por los demandados-apelantes.
Estudiado detenidamente el expediente, así como la doctrina aplicable, resolvemos confirmar la Sentencia apelada.
I
La presente controversia tiene su origen en la relación profesional establecida desde el 1986 entre el demandante Ledo. Roberto Palou Bosch y el Sr. Enrique Rosario Robles, la Sucesión de su esposa la Sra. Aurora Soto Falcón y la Sociedad Legal de Gananciales compuesta por ambos. En la Sentencia apelada, el Tribunal de *340 Primera Instancia (en lo sucesivo TPI) determinó, luego de aquilatar la prueba documental y testifical presentada, que el demandado-apelante, Enrique Rosario Robles, contrató al demandante-apelado, Ledo. Palou Bosch, para que le prestara servicios profesionales de abogado.
Determinó el tribunal, además, que la prueba estableció claramente que el contrato de servicios que medió entre las partes fue uno verbal a razón de un 33% de honorarios contingentes porque el demandado-apelante en esos momentos no contaba con los medios económicos necesarios para sufragar honorarios de abogado con regularidad. También concluyó que las partes acordaron en 1986 un depósito inicial (“retainer fee”) de cinco mil dólares ($5,000.00).
Según surge de los autos, el demandante-apelado trabajó para el demandado-apelante durante quince (15) años durante los cuales no recibió pagos por sus servicios, con la excepción del pago de ciento diez mil, seiscientos sesenta dólares ($110,660.00) recibidos como pagos parciales de sus honorarios contingentes. La situación económica precaria del demandado-apelante, Rosario Robles, cambió dramáticamente al resultar victorioso en la acción legal en la cual fue representado por el demandante-apelado (DAC86-4617). Veamos.
En el pleito DAC86-4617, el demandado-apelante intentaba que se le reconocieran sus derechos como socio del negocio conocido como “Macelo La Muda” (en lo sucesivo, Macelo) para poder cobrar las participaciones que le correspondían. El descubrimiento de prueba de dicho pleito fue prolongado y difícil, pues el demandado en aquel pleito, el señor Ismael Lozada Burgos, no conservaba documentos sobre los gastos y ganancias del Macelo. Inclusive, el caso debió ser fraccionado por su complejidad. La primera etapa giró en torno a la controversia sobre la existencia de una sociedad entre los demandantes y el demandado. La segunda etapa consistió en la valoración de las participaciones correspondientes a los socios.
Las vistas en su fondo del caso DAC86-4617 se prolongaron por espacio de ochenta y un (81) días durante los años 1988, 1989 y 1990. El Juez que tenía el caso asignado inicialmente se incapacitó por enfermedad y las vistas en su fondo debieron celebrarse nuevamente. Esto también obligó a tener que transcribir toda la prueba presentada ante el primer Juez que atendió el caso. El juicio en su fondo ante el segundo Juez asignado se extendió durante los años 1991, 1992 y 1993. En Sentencia Parcial emitida el 21 de junio de 1994 se reconoció la existencia de un contrato de sociedad entre los señores Ismael Lozada, el aquí demandado-apelante Enrique Rosario Robles y Jorge Morales. Además, se determinó que el entonces demandado Sr. Ismael Lozada incurrió en dolo mediante ocultación y engaño de los bienes de la sociedad y por lo tanto respondía por concepto de daños y perjuicios. Cabe señalar que dicha Sentencia Parcial fue apelada por el demandado Ismael Lozada hasta llegar a nuestro Tribunal Supremo que declaró la apelación Sin Lugar. El aquí demandado-apelante también fue representado durante el trámite apelativo por el aquí demandante-apelado Ledo. Palou Bosch.
El caso DAC86-4617 continuó con la designación del Ledo. José A. Maysonet Marrero, contador público autorizado (en lo sucesivo CPA, por sus siglas) y abogado, para que estableciera un plan de trabajo con el cual se pudiese determinar el volumen de la actividad económica del Macelo y así poder establecer la participación en dicho negocio de los socios Jorge Morales y el aquí demandado-apelante. Fallecido el demandado en aquel pleito, el Sr. Ismael Lozada, el mismo fue sustituido por su Sucesión y su viuda.
Luego, el TPI nombró al Sr. Cario R. De Choudens como administrador del Macelo. Relevó a la contable que utilizaba el demandado Sr. Ismael Lozada en el mismo, la Sra. Teresita Mulero (CPA), y ordenó el comienzo de la auditoria del negocio. Se designó para ello al Sr. Almodóvar que previamente había sido contratado como perito de los socios Jorge Morales y el aquí demandado-apelante y había intervenido en la primera etapa del caso. Además, se nombró como tasador del inmueble que servía de ubicación a Macelo al Sr. Raúl Barreras. Este le atribuyó a dicho inmueble un valor de dos millones novecientos cuarenta y cinco mil dólares ($2,945,000.00).
La vista en su fondo de la segunda etapa del caso DAC86-4617 fue celebrada los días 15, 16 y 17 de enero y *341 el 14 de julio de 1997. En Sentencia emitida el 8 de septiembre de 1995, el TPI dispuso que el inmueble pertenecía al aquí demandado-apelante en un cincuenta (50%) y que su participación incluyendo las ganancias, el inmueble y los intereses, ascendía al 8 de septiembre de 1988 a dos millones, doscientos diecisiete mil ochocientos cincuenta y cinco dólares ($2,217,855.00). A los aquí demandados-apelantes Enrique Rosario Robles, su esposa Aurora Soto y la Sociedad Legal de Gananciales compuesta por ambos se le reconoció una participación de la mitad del Macelo y el derecho a recibir la mitad de tres millones setecientos setenta y tres mil ciento sesenta y cinco dólares ($3,773,165.00). Además, tenían derecho a recibir veinticinco mil dólares ($25,000.00) por concepto de honorarios de abogado.
Conforme a la Sentencia apelada, en el año 2000, los socios del Macelo, Enrique Rosario Robles y Jorge Morales se reunieron con el Ledo. José A. Rivera Cordero y con el demandante-apelado, Ledo. Palou Bosch, para discutir el pago de honorarios del caso DAC86-4617. En la misma, todas las partes reconocieron el pago del treinta y tres porciento (33%) de la participación obtenida en dicho pleito. Cabe mencionar que los letrados antes mencionados y que representaron a los socios victoriosos en el pleito DAC86-4617, no contabilizaron las horas trabajadas a cuenta del acuerdo previo con sus clientes para el cobro de honorarios contingentes.
De otra parte, el TPI determinó que el demandante-apelado representó al demandado-apelante en otros foros como la Junta de Calidad Ambiental, la Administración del Seguro Social, el Departamento del Trabajo y Recurso Humanos, el Departamento de Justicia y la Autoridad de Energía Eléctrica, entre otros. Además, el demandante-apelado representó al demandado-apelante, Rosario Robles, ante el TPI en el caso Banco de Santander de PR v. Delia Flores y otros, DCD97-0176, sobre cobro de dinero y ejecución de hipoteca. Nuevamente, el demandante-apelado representó al demandado-apelante, que compareció como parte interventora en el pleito Autoridad de Carreteras v. Ismael Lozada Burgos, sobre expropiación forzosa. Como resultado de dicha intervención, el demandado-apelante obtuvo setenta mil dólares (470,000.00) que el Sr. Ismael Lozada les adeudaba según la sentencia del caso DAC86-4617.
El TPI determinó que la labor del demandante-apelado continuó durante los años 1999 y 2000 al tener que llevar a cabo una investigación para localizar los bienes del demandado en el caso DAC86-4617, Sr. Ismael Lozada, y poderlos embargar. Asimismo, el demandante-apelado representó a los demandados-apelantes en el recurso de Certiorari KLCE-1997-00098 para oponerse al levantamiento de la Orden de Embargo y Prohibición de Enajenar que pesaba sobre los bienes muebles e inmuebles del Sr. Ismael Lozada y otros codemandados en el pleito DAC86-4617. En este punto, cabe mencionar, que en junio de 1999 el demandante-apelado fue suspendido por un mes del ejercicio de la abogacía y la notaría por el Tribunal Supremo de Puerto Rico, siendo reinstalado en agosto de ese mismo año. Véase, In Re: Palou Bosch, 148 D.P.R. Ill (1999).
En abril de 2000, las partes en el caso DAC86-4617 llegaron a un acuerdo de transacción por el cual se le entregó al demandado-apelante Rosario Robles y su socio Jorge Morales el cincuenta porciento (50%) del Macelo, la propiedad inmueble y el equipo de dicho negocio y setenta mil dólares ($70,000.00) obtenidos en el caso sobre expropiación forzosa KEF96-126.
En comunicación escrita fechada 9 de marzo de 2001, el demandante-apelado le requirió al demandado-apelante el pago de sellos, comprobantes y honorarios de notario para realizar el traspaso del Macelo. Además, solicitó la liquidación de sus honorarios a razón de un treinta y tres porciento de lo obtenido por el demandado-apelado según convenido.
El 4 de mayo de 2001, el demandante-apelado recibió una misiva escrita del Ledo. José M. Hernández en la cual se le informó que representaba al demandado-apelante, que éste le había solicitado la renuncia desde el 3 de abril de 2001 y que debía preparar una relación de gastos y pagos para conocer lo que todavía se le adeudaba. El demandante-apelado remitió la factura al demandado-apelante por conducto del Ledo. José M. Hernández el 26 de junio de 2001. Al no recibir pago de honorarios, el 6 de noviembre de 2001, el demandante radicó la presente *342 causa de acción ante el TPI.
Entre los trámites procesales del pleito de autos podemos mencionar que la parte demandada-apelada presentó una Reconvención y solicitó en tres ocasiones la desestimación del pleito (enero, mayo y agosto de 2002). Además, el 21 de enero de 2002, presentó recurso de Certiorari ante este foro apelativo para que revisáramos la Resolución del TPI que declaró No Ha Lugar su moción de desestimación (KLCE-03-00086). En Resolución fechada 25 de febrero de 2003 resolvimos desestimar dicho recurso.
Por otro lado, el demandado apelado, radicó en junio de 2002 una querella ante el Tribunal Supremo de Puerto Rico en contra del demandante-apelado (AB-2002-172) acusándole, entre otras cosas, de cometer injusticias y apropiarse de dinero del demandado-apelante. Alegó también que era ilegal el cobro del treinta y tres porciento (33%) de honorarios sin contrato escrito.
El 24 de octubre de 2002, el Procurador General rindió su informe y recomendó el archivo de la querella. Determinó que el demandante-apelado nunca se apropió de dinero del demandado-apelante y que no presentó prueba que sustentara sus alegaciones. En particular, sostuvo que no incurre en violación ética al cobrar el treinta y tres porciento (33%) de honorarios contingentes. El Tribunal Supremo resolvió desestimar la querella. El TPI al examinar dicha querella en la Sentencia apelada estimó que la misma “era frívola, sin fundamento y con información contraria a lo que el demandado Rosario conocía era lo cierto”. 
El 26 de enero de 2003 se celebró la Conferencia con Antelación al Juicio. En la misma se establecieron como controversias determinar si el demandado actuó de mala fe, con dolo y con intención, la existencia de un contrato verbal con honorarios contingentes de treinta y tres porciento (33%) de lo obtenido por el demandado-apelante en el caso DAC86-4617 y si el demandante-apelado adeudaba dinero por pagos hechos en exceso por el demandado-apelado.
En marzo de 2004, el demandado apelante presentó una “Moción De Inhibición” solicitando la descalificación de la Juez Sagebien, quien tenía el caso inicialmente asignado. Luego de la inhibición motu proprio de dicha Juez, el juicio en su fondo se celebró los días 27, 28, 29 y 30 de abril de 2004. El TPI emitió la Sentencia apelada el 13 de agosto de 2004 declarando Con Lugar la demanda en cobro de dinero e incumplimiento de contrato y declarando No Ha Lugar la reconvención instada por el demandado-apelante. La misma fue notificada el 19 de agosto de 2004.
Inconforme con el resultado, acude ante nos el demandado-apelante. Aduce que el TPI cometió los siguientes errores:

“Primer Error: El tribunal a quo estaba impedido de conceder remedio alguno a apelado (sic) por la doctrina que dice:

No se le puede reconocer ni otorgar remedio alguno a la parte culpable de la ilicitud”.

Segundo Error: El Tribunal a quo estaba impedido de otorgar remedio alguno al apelado cuando no podía seguir en dicho caso porque había sido suspendido de la profesión.

Tercer Error: El Tribunal debió desestimar la demanda por la alegación, cuando va escalonando su admisión de lo que había cobrado de $52,000.00 a $110,000.00 demostrando su falta de honestidad al Tribunal de la faz de las alegaciones.

Cuarto Error: El Tribunal a quo violó la doctrina de ITT Intermedia, 97 TTS 104 (sic) y permitirle la “reconstrucción de un récord de horas trabajadas”, no contemporáneo como requiere la doctrina

*343
Quinto Error: El Tribunal a quo cometió error al permitirle que el abogado adquiriera un interés o participación en los ingreso (sic) del negocio del apelante, permitiendo un contable hasta valorar el “good will”. (Enfasis en el original).

Sexto Error: El Tribunal a quo cometió error al permitirle que al apelado tasar el inmueble, terreno y estructura, del apelante y su socio Jorge Morales, para determinar una cuota litis de 1.69 Millones (sic) de dólares, permitiendo se convirtiera el apelado en el tercer socio.

Séptimo Error: El Tribunal a quo cometió error al conceder daños al apelado, cuando estaba cobrando el negocio del apelante había cobrado $110,000.00, que finalmente soltó por estipulación en sala.

Octavo Error: El Tribunal a quo cometió error al concederle Honorarios de abogado por $30,000.00 cuando el temerario es el apelado, que hubo que esperar tanto tiempo para que en sala estipulara que cobró $110,000.00.

Noveno Error: El Tribunal a quo cometió error al dictar una sentencia nula sin hacer al otro socio Jorge Morales, parte del proceso.

Décimo Error: El Tribunal a quo dictó una sentencia nula a sabiendas que estaba transfiriendo el patrimonio del apelante al abogado apelando, un enriquecimiento injusto, contrario a la moral, la ética y las doctrinas del Tribunal Supremo, que ve la cuota litis como algo deplorable y censurable, dándole legalidad a un acto de despojo.

Undécimo (sic) Error: El Tribunal a quo actuó con parcialidad en el caso, adopta que se le pagó un millón y medio al abogado de Lozada, sin que nadie declarase al respecto. ”

Con posterioridad a la radicación del presente recurso, la parte demandada-apelada radicó un escrito titulado “Alegato Suplementario'” y adujo la comisión de varios errores adicionales. Por su parte, el demandante-apelante se opuso al “Alegato Suplementario” y nos solicitó su desestimación por considerar que el mismo era tardío e improcedente.
La Regla 21 del Reglamento del Tribunal de Apelaciones, res. el 20 de julio de 2004, 2004 J.T.S. 112, señala que en procedimientos apelativos en los que se cuestiona la apreciación de la prueba hecha por el TPI:

“el apelante puede presentar un alegato suplementario treinta (30) días después de la presentación de la exposición estipulada o narrativa de la prueba o de la transcripción, con el propósito de hacer referencia a las porciones de la exposición o de la transcripción que sean relevantes a sus señalamientos de error”.

Toda vez el “Alegato Suplementario” presentado por el demandado-apelante no corresponde a lo dispuesto en la precitada Regla 21 de nuestro Reglamento, estamos impedidos de acogerlo.
I
-A-
Es doctrina ampliamente reconocida en nuestro ordenamiento jurídico procesal que ante la ausencia de otras herramientas para evaluar si el TPI erró en su apreciación de la prueba, los tribunales apelativos debemos mantener la norma de deferencia judicial en cuanto a la apreciación de la prueba oral que hizo el juzgador de instancia. [3] Dicha norma jurídica establece que la apreciación de la prueba realizada por el tribunal sentenciador y la credibilidad que dicho foro otorgue a la prueba debe ser objeto de gran deferencia por los tribunales apelativos, los cuales, en ausencia de circunstancias extraordinarias o que demuestren que el tribunal apelado *344 actuó movido por la pasión, el prejuicio, la parcialidad, o error manifiesto, no deben intervenir con las determinaciones de hechos de este último. Municipio de Ponce v. Autoridad de Carreteras y Transportación, 2001 J.T.S. 3, a la pág. 658; Trinidad García v. Chade, 2001 J.T.S. 10 a la pág. 793; Colón González v. K-Mart, 2001 J.T.S. 98, a la pág. 1484; Monllor Arzola v. Soc. Legal de Gananciales, 138 D.P.R. 600 (1995); Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721 (1984).
Ahora bien, esta norma de deferencia judicial no es aplicable a la evaluación de prueba documental o pericial debido a que, en estos casos, los tribunales apelativos están en las mismas condiciones que el tribunal de instancia. Por tal razón, los tribunales apelativos pueden adoptar su propio criterio en cuanto al valor probatorio de ese tipo de evidencia. Dye-Tex P.R., Me. v. Royal Ins. Co., P.R., 150 D.P.R. 658, 662 (2000); Culebra Enterprises Corp. v. E.L.A., 143 D.P.R. 935 (1997).
La apreciación de la prueba efectuada por los tribunales sentenciadores gozará de gran respeto y deferencia. Ello se fundamenta en el hecho de que dichos foros son quienes tienen la oportunidad de ver y observar a los testigos mientras deponen, sus gestos, dudas y contradicciones. Al apreciar la prueba ante su consideración, los tribunales apelativos no habrán de pasar juicio sobre la credibilidad de los testimonios ofrecidos ante el foro de instancia y sustituirlo por el criterio propio. La razón para dicha deferencia estriba en que el tribunal de instancia es el foro ante el cual declararon los testigos y el cual tuvo la oportunidad de apreciar el comportamiento, evaluar la veracidad del testimonio y dirimir cualquier conflicto que surgiera en el proceso. Pueblo v. Dávila Delgado, 143 D.P.R. 157 (1997); Pueblo v. Chévere Heredia, 139 D.P.R. 1 (1995); Pueblo v. Rodríguez Román, 128 D.P. R. 121 (1991.
Recapitulando, es un principio cardinal que los foros apelativos no intervendrán con las determinaciones efectuadas por los magistrados de instancia a menos que en las mismas exista error manifiesto o que éstos hayan actuado movidos por prejuicio, parcialidad o pasión. Monllor v. Soc. de Gananciales, 138 D.P.R. 600 (1995); Pueblo v. Lorio Ormsby I, 137 D.P.R. 722 (1994).
Claro está, la norma antes expuesta no implica que los juzgadores de instancia sean inmunes a cometer errores ni que tales determinaciones sean inmutables. El arbitrio del juzgador, aunque respetable y merecedor de deferencia, no es absoluto. La apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. En dicha función revisora, el tribunal apelativo, por vía de excepción, puede descartar las determinaciones de hechos del Tribunal de Primera Instancia cuando éstas no representan el balance más racional, justiciero y jurídico de la totalidad de la prueba que desfiló ante dicho tribunal. Véanse, Méndez v. Morales, 142 D.P.R. 26, (1996); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357, 365 (1982).
-B-
En nuestra jurisdicción impera el principio de libertad de contratación. Es decir, las partes otorgantes pueden establecer las cláusulas, pactos y condiciones que estimen conveniente. Como única limitación, la ley preceptúa que las aludidas estipulaciones no podrán ser contrarias a la ley, la moral ni al orden público. Art. 1207 del Código Civil, 31 L.P.R.A. §3372; Irizarry López v. García Cámara, 155 D.P.R. _ (2001), 2001 J.T.S. 164; Trinidad García v. Yamil Chade, 153 D.P.R. _ (2001), 2001 J.T.S. 10; Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. 508 (1998). Se ha dispuesto además que “[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos. ” Art. 1044 del Código Civil, 31 L. P.R.A. §2994.
En vista de ello, el contrato, una vez perfeccionado, es fuente de obligaciones y las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que esté conforme a la buena fe, al uso y a la ley. Alt. 1210 del Código Civil, 31 L.P.R.A. §3375; Trinidad García v. Yamil Chade, supra; Amador Parrilla v. Concilio Iglesia Universal, 150 D.P.R. 571 (2000).
*345 Habida cuenta de ello, el pacto de honorarios entre un abogado y su cliente constituye un contrato de arrendamiento de servicios profesionales. Art. 1473 del Código Civil de Puerto Rico, 31 L.P.R.A. §4111; Sánchez Acevedo v. E.L.A. 125 D.P.R. 432, 439 (1990); Ramírez Segal & Látimer v. Rojo Rigual 123 D.P.R. 161, 172 (1989); Nassar Rizek v. Hernández, 123 D.P.R. 360, 361 (1989). Este tipo de contrato, considerado de naturaleza sui generis, tiene un interés público superior que puede trascender el interés exclusivo de las partes que lo pactan. El mismo está saturado de un elemento ético que lo hace substancialmente diferente del convenio común sobre arrendamientos de servicios. Nassar Rizek v. Hernández, supra, a las págs. 369-370; López de Victoria v. Rodríguez. 113 D.P.R. 265, 268 (1982).
Es primordial tener en cuenta que la discusión sobre honorarios por servicios profesionales de abogado tiene que fundamentarse en los Cánones de Etica Profesional, que son los principios que rigen la conducta de la clase togada. Maritza Pagán de Joglar v. Francisco Cruz Viera, 136 D.P.R. 750 (1994); Pérez Marrero v. Col. Cirujanos Dentistas de P.R., 131 D.P.R. 545 (1992); Ramírez Segal & Látimer v. Rojo Rigual, supra, a la pág. 171. En particular, el Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 24, dispone:

“La fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es parte integrante de la administración de la justicia y no un mero negocio confines de lucro. Al fijar el valor de los honorarios, deben considerarse los siguientes factores:

(1) El tiempo y el trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso;

(2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes;

(3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares;

(4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado;

(5) la contingencia o certeza de la compensación, y

(6) la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.

Es deseable que se llegue a un acuerdo sobre los honorarios a ser cobrados por el abogado al inicio de la relación profesional y que dicho acuerdo sea reducido a escrito.

Un abogado debe exigir el pago de honorarios contingentes sólo en aquellas ocasiones en que dichos honorarios sean beneficiosos para su cliente, o cuando el cliente lo prefiera así después de haber sido debidamente advertido de las consecuencias.

Con el propósito de que los clientes estén protegidos contra cargos injustos, los honorarios contingentes deben ser razonables y estar siempre sujetos a la aprobación del tribunal, en aquellos casos en que la intervención judicial sea requerida por ley o por alguna de las partes en el litigio. Es altamente impropio de un abogado el cobrar honorarios contingentes en un caso criminal.

El abogado debe acatar los deseos de un cliente ansioso de transigir su pleito.

*346 Los honorarios concedidos por un tribunal son para beneficio del cliente y no debe el abogado reclamarlos para sí o renunciarlos sin autorización expresa del cliente. ” (Enfasis suplido).
Los honorarios pactados y su cuantía deberán ajustarse al espíritu y letra del Canon precitado. El Tribunal Supremo ha reiterado que es deseable llegar a un acuerdo escrito sobre honorarios de abogado al inicio de la relación profesional entre abogado y cliente. Méndez v. Morales, 142 D.P.R. 26 (1996); Pérez Marrero v. Col. de Cirujanos Dentistas de P.R., 131 D.P.R. 545 (1992). No obstante, lo anterior no significa que los contratos verbales de honorarios de abogados estén prohibidos, no sean exigibles, ni que un contrato de honorarios ambiguo no sea válido y susceptible de interpretación. Méndez v. Morales, ante; In re: Castro Mesa, et ais, 131 D.P.R. 1037 (1992); Ramírez Segal & Látimer v. Rojo Rigual, supra, a la pág. 172.
En Nassar Rizek v. Hernández, supra, a la pág. 372, se dijo que en nuestro ordenamiento jurídico no existe disposición alguna que requiera la forma escrita en el contrato de servicios profesionales de abogado como prerrequisito para su validez. Se ha establecido que cuando surjan disputas de índole contractual entre abogados y sus clientes, los tribunales están llamados a revisar cuidadosamente el acuerdo y las circunstancias de dichos contratos. Nassar Rizek v. Hernández, supra, a la pág. 375.
Por otro lado, un contrato de servicios profesionales no se invabda por ausencia de precio cierto, ya que el tribunal puede determinar una cuantía razonable usando como base la costumbre en la profesión. Ramírez Segal & Latimer v. Rojo Rigual, supra, a la pág. 173. Al fijar la cuantía de honorarios de abogado, el tribunal tomará en consideración factores tales como: (1) el grado de temeridad que ha existido; (2) la naturaleza del procedimiento; (3) los esfuerzos y actividad profesional que haya habido que desplegar, y (4) la habilidad y reputación de los abogados. Santos Bermúdez v. Texaco Puerto Rico, Inc., 123 D.P.R. 351 (1989).
En casos de pacto de honorarios contingentes, el abogado o abogada tiene el deber de explicarle a su cliente las consecuencias de este tipo de pacto. Sólo si el cliente así lo desea, luego de entender las consecuencias, es que debe pactarse los honorarios contingentes, siempre teniendo presente que éstos deben ser beneficiosos para el cliente. Ramírez, Segal & Látimer v. Rojo Rigual, ante.
El Tribunal Supremo definió esta forma de pacto de honorarios de la siguiente manera: “[a] los fines de las relaciones profesionales entre un abogado y su cliente, designase como “honorarios contingentes” de dicho profesional, el acuerdo entre las partes de que el abogado será compensado si gana el caso y en proporción a la cuantía concedida en la sentencia. ” Colón v. All Amer. Life & Cas. Co., 110 D.P.R. 772 (1981). En estos casos, no es propio que los honorarios del abogado dependan de contingencias ajenas a su labor dentro del mismo. Ibid, a la pág. 777.
De otra parte, se ha reconocido que cuando medie un contrato escrito de honorarios contingentes, que no incluya la eventualidad de la terminación del pleito por desistimiento, el abogado tiene derecho a cobrar honorarios por el valor razonable de los servicios prestados, o quántum meriut. Pérez Marrero v. Colegio de Cirujanos Dentistas, 131 D.P.R. 545 (1992). También se reconoce que cuando de la totalidad de la prueba resulta ineludible concluir que no existió un acuerdo entre las partes sobre los honorarios a pagarse, es de aplicación el Artículo 1473 del Código Civil, que establece el derecho a reclamar el valor razonable de los servicios prestados. Méndez v. Morales, ante.
En síntesis, en nuestro estado de derecho vigente no existe limitación alguna en relación con la especie del contrato que las partes acuerden como método para cobrar los honorarios por servicios justamente rendidos. Nassar Rizek v. Hernández, supra, a la pág. 373.
Analizada la controversia bajo el crisol doctrinario previamente esbozado, procedemos a resolver.
*347 Ill
Los demandados-apelantes señalan once errores en su recurso para alegar, en síntesis, que erró el tribunal al reconocer como válido el contrato verbal de honorarios contingentes a razón de un treinta y tres porciento (33%) de la cuantía concedida en la sentencia del caso DAC86-4617. Añade que el demandante-apelado actuó con deshonestidad por no reconocer desde el inicio de la demanda que se le habían pagado por concepto de honorarios ciento diez mil dólares ($110,000.00). Además, arguye que la Sentencia apelada es nula porque representa un enriquecimiento injusto y el TPI actuó con parcialidad. Amparándose en la decisión López Vicil v. ITT Intermedia, 145 D.P.R. 574 (1997), enfatizan que es ilegal presentar un récord de horas trabajadas no contemporáneas.
En primer lugar, tal y como señaláramos previamente, la forma escrita no es prerrequisito de validez en los contratos de servicios profesionales de abogado. Aunque el demandante-apeládo debió reducir a escrito el acuerdo sobre honorarios para así evitar discrepancias con su entonces cliente, ello no es óbice para no reconocer la existencia del mismo. En el presente caso, el TPI dio por probada la existencia de un contrato verbal de honorarios y aplicó correctamente la jurisprudencia y los Cánones de Ética relacionados con los contratos de servicios profesionales de abogados.
Por su parte, los demandados-apelantes no sustentan su alegación de ilegalidad y nulidad del contrato. No cabe duda que el demandante-apelado, Ledo. Palou Bosch, dedicó tiempo y esfuerzo por espacio de quince (15) años a la causa de acción de sus clientes en el caso DAC86-4617. También, resulta indudable que el demandado-apelante Rosario Robles resultó victorioso al ser reconocido como socio de un lucrativo Macelo en dicho pleito. Luego de dos sentencias, las partes en aquel pleito acordaron transar la reclamación. El demandado-apelante adquirió el cincuenta porciento (50%) del Macelo, el bien inmueble con el equipo de dicho negocio y una suma de setenta mil dólares ($70,000.00). Al calcular los honorarios adeudados al demandante-apelado, el TPI tomó en consideración el valor en el mercado del inmueble donde sita el Macelo ($8,089,000.00), la plusvalía o “goodwill” del mismo ($2,692,692.00), además de los $70,000.00 antes mencionados. Al así hacerlo siguió la normativa antes expuesta sobre honorarios contingentes, que deben ser estimados de acuerdo a la cuantía obtenida por el demandado-apelante en el pleito DAC86-4617. En definitiva, no encontramos base alguna para variar la apreciación de prueba del tribunal, puesto que la misma sustenta la determinación de que medió un contrato de honorarios contingentes entre las partes.
En segundo lugar, la alegación de los demandados-apelados sobre un alegado enriquecimiento injusto no está sustentada, ni surge del récord ante nos. Sabido es que la causa de acción sobre enriquecimiento injusto sólo procede cuando no existe ley que provea para otra causa de acción. Ortiz Andújar v. E.L.A., 122 D.P.R. 817 (1988). Se habla propiamente de enriquecimiento injusto cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente. Ibíd. Para que proceda la aplicación de dicha doctrina es necesario que concurran ciertos requisitos básicos, a saber: i) existencia de un enriquecimiento; ii) un correlativo empobrecimiento; iii) una conexión entre dicho empobrecimiento y enriquecimiento; iv) falta de una causa que justifique el enriquecimiento; v) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. Ortiz Andujar v. E.L.A., ante; Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987). Estudiada la situación de autos con este marco de referencia, resulta forzoso concluir que la doctrina de enriquecimiento injusto no es de aplicación a la situación de autos.
De otra parte, la acción del demandante-apelado de enmendar la alegación de su demanda para ajustar la cantidad de honorarios percibidos de cincuenta y dos mil ($52,000.00) a ciento diez mil ($110,000.00), no denota ilicitud ni falta de honestidad. Además, el reconocimiento de error del demandante-apelado no acarrea un peijuicio indebido para la parte demandada, ni altera radicalmente la naturaleza ni el alcance del caso. Véanse, Torres Cruz v. Municipio de San Juan, 103 D.P.R. 220 (1975); José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Regla 13.1 de las de Procedimiento Civil, pág. 316, Publicaciones JTS (2000).
*348 No entraremos a discutir el señalamiento de error relacionado a la supuesta ilegalidad de presentar un récord de horas trabajadas no contemporáneas al amparo de la decisión López Vicil v. ITT Intermedia, 145 D.P. R. 574, 584 (1997), toda vez dicha doctrina es inaplicable a la situación de autos. Los criterios expuestos por el Tribunal Supremo en dicha decisión claramente se circunscriben a compensaciones por honorarios en casos al amparo de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. §146 et seq., según enmendada, conocida como Ley Contra Discrimen en el Empleo.
En tercer lugar, los demandados-apelantes tampoco fundamentan su contención de que el demandante-apelado tenía que renunciar a la representación del demandado-apelante en el caso DAC86-4617. No hemos encontrado ni en las leyes ni en la jurisprudencia apoyo a su contención. El caso DAC86-4617 se prolongó durante quince años de los cuales el demandante-apelado estuvo suspendido treinta días. In Re: Palou Bosch, ante.
En cuanto a la determinación de temeridad que sustenta la imposición de honorarios de abogado, la misma depende de la sana discreción del TPI. Fernández v. San Juan Cement Inc., 118 D.P.R. 713 (1987); Raoca Plumbing v. Trans World, 114 D.P.R. 464, 468(1983). “En ausencia de una conclusión expresa a esos efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada. ” Rivera v. Tiendas Pitusa, 148 D.P.R. 695, 702 (1999), citando a Montañez Cruz v. Metropolitan Cons. Corp., 87 D.P.R. 38, 39-40 (1962). Dicha decisión no será revisada por este Tribunal a menos que el tribunal sentenciador haya cometido un abuso de discreción, lo cual corresponde a la parte apelante demostrar. CNA Casualty de P.R. v. Torres Díaz, 141 D.P.R. 27 (1996). Los apelantes no nos han demostrado que el TPI abusara de su discreción al momento de encontrar a los demandados-apelantes incursos en temeridad. No tenemos base para revocarla y por ello no vamos a intervenir con dicha determinación.
Por último, debemos señalar que la parte demandada-apelante ha presentado un recurso plagado de errores e incoherencias. El recurso de apelación carece de las referencias necesarias a las determinaciones de hechos o a las conclusiones de derecho de la Sentencia que nos muevan a concluir que se cometieron los errores aducidos. En su alegato, los demandados-apelantes no discuten errores en la apreciación de la prueba que sustenten su posición de que la parte demandante-apelada es culpable de ilicitud y deshonestidad y de que el TPI actuase con parcialidad. En ausencia de pasión, prejuicio o error manifiesto, no intervenimos con la apreciación de la prueba efectuada por el TPI. En virtud de lo anterior, no es necesario que discutamos los restantes señalamientos de error.
IV
En mérito de lo antes expresado y de conformidad al derecho citado, resolvemos que el foro de instancia no cometió los errores que le imputan los demandados-apelantes. Se confirma la Sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones