Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Nelson Vélez Lugo | 2011 TSPR 44<br><br>180 DPR \_\_\_\_ |

Número del Caso: CP    - 2007 - 14

Fecha: 28 de febrero de 2011

Abogado del querellado:

    Por derecho propio

Oficina de la Procuradora General:

    Lcda. Minnie H. Rodríguez López
    Procuradora General Auxiliar

Materia: Conducta Profesional          –   La suspensión será       efectiva una vez advenga final y firme la Sentencia conforme la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del pro                          ceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Lcdo. Nelson Vélez Lugo

CP-2007-14

*PER CURIAM*

San Juan, Puerto Rico, a 28 de febrero de 2011.

El licenciado Nelson Vélez Lugo, en adelante licenciado Vélez Lugo, fue admitido al ejercicio de la abogacía el 6 de junio de 1983 y prestó juramento como notario el 23 de junio de 1983.[1] El 27 de junio de 2007, el Procurador General presentó una Querella sobre conducta profesional contra el licenciado Vélez Lugo por violaciones a los Cánones 24, 25 y 38 de Ética Profesional.

Procedemos a relatar los acontecimientos procesales que motivaron la Querella, según surgen del expediente.

---

[1] Es preciso señalar que el licenciado Vélez Lugo tiene pendiente tres (3) Quejas ante este Foro, a saber, AB-2007-229 (CP-2008-021), AB-2010-064 y AB-2010-072.

## I

La Queja AB-2006-249 contra el licenciado Vélez Lugo fue presentada por la señora Áurea Concepción Pérez Morales y el señor Rafael Ángel Ramírez Toro, en adelante los quejosos. Ésta se origina en un Contrato de Servicios Profesionales suscrito entre los quejosos y el licenciado Vélez Lugo.

Los quejosos alegaron que acordaron pagar al licenciado Vélez Lugo la cantidad de cinco mil (5,000) dólares por concepto de honorarios de abogado para que los representara en un caso de daños y perjuicios (Civil Núm. IDP2002-0001) en el cual fueron demandados. Esta cantidad fue satisfecha. Acordaron, a su vez, que de prevalecer los quejosos en la reclamación instada luego del juicio en su fondo, le pagarían diez mil (10,000) dólares adicionales al letrado.

El caso se resolvió a favor de los quejosos toda vez que se desistió con perjuicio del mismo. Ahora bien, los quejosos plantearon que, a pesar de no haber juicio en su fondo, el licenciado Vélez Lugo insistió en cobrarle los diez mil (10,000) dólares por concepto de honorarios de abogado. Éstos se negaron a tal pretensión por lo que el licenciado Vélez Lugo los demandó en una acción en cobro de dinero. (Caso Núm. 13C1200500170). Completados los trámites de rigor, el Tribunal de Primera Instancia declaró sin lugar la Demanda incoada por el licenciado Vélez Lugo contra los quejosos. Esta decisión fue confirmada por los

foros apelativos. Ante este escenario los quejosos alegaron que se habían sentido indignados por las acciones del licenciado Vélez Lugo.

Instada la Queja, el licenciado Vélez Lugo presentó su Contestación. Alegó que el acuerdo suscrito consistía en el pago de cinco mil (5,000) dólares por tomar el caso y diez mil (10,000) dólares de "ganarse yendo a juicio". En su comparecencia el licenciado Vélez Lugo acotó que había apelado la determinación del Tribunal de Primera Instancia de desestimar su reclamación de honorarios de abogado en el caso de cobro de dinero presentado contra los quejosos ante el Tribunal de Apelaciones.[2] Argumentó el letrado que lo único que hizo fue reclamar lo que en derecho procedía acorde con el Contrato suscrito entre las partes.

El 18 de diciembre de 2006 el Procurador General sometió su Informe sobre la Queja instada. Señaló que la conducta desplegada por el licenciado Vélez Lugo atentaba contra lo dispuesto en los Cánones 24 y 25 de Ética Profesional.

Luego de examinar los documentos, y de ciertos trámites procesales que incluyeron concederle término al licenciado Vélez Lugo para que contestara el Informe, el 11 de mayo de 2007 le ordenamos al Procurador General que presentara la correspondiente Querella. El 27 de junio de 2007 el Procurador General presentó Querella sobre conducta

---

[2] EL Tribunal de Apelaciones emitió Sentencia confirmando al Tribunal de Primera Instancia el 2 de noviembre de 2006. Este Foro denegó expedir auto de *certiorari* solicitado para revisar la Sentencia del Tribunal de Apelaciones (CC-2006-1090).

profesional contra el licenciado Vélez Lugo, imputándole violaciones a los Cánones 24, 25 y 38 de Ética Profesional, 4 L.P.R.A. Ap. IX.

Mediante Orden emitida, peticionamos al licenciado Vélez Lugo a contestar la Querella incoada en su contra. El licenciado Vélez Lugo presentó su contestación a las alegaciones expuestas en la Querella presentada.

Luego de los trámites de rigor, el 31 de octubre de 2007 designamos a la Hon. Ygrí Rivera de Martínez como Comisionada Especial para atender el procedimiento de autos. Tras celebrar una vista evidenciaría, la Comisionada Especial rindió su Informe. De éste surgen las determinaciones de hecho siguientes:

1. El Lcdo. Nelson Vélez Lugo fue admitido al ejercicio de la abogacía el día 6 de febrero de 1983 y a la notaría el 23 de junio de 1983.

2. Los esposos Rafael Ángel Ramírez Toro y Áurea Concepción Pérez Morales, quienes fueron demandados ante el Tribunal de Primera Instancia, Sala Superior de Mayaguez, (sic) en el caso civil núm. IDP2002-0001, sobre: Incumplimiento de Contrato y Daños y Perjuicios, acudieron a la oficina del Lcdo. Nelson Vélez Lugo para que éste los representara legalmente en dicho caso.

3. A tales efectos, el 28 de enero de 2002, los esposos Ramírez Pérez suscribieron un contrato de servicios profesionales con el licenciado Vélez Lugo.

4. El referido contrato de servicios profesionales disponía textualmente sobre los honorarios de abogado, lo siguiente:

   a) …Cinco mil dólares por tomar el caso, los que se pagarán tres mil dólares (3,000.00) al inicio y dos mil dólares (2,000.00) el 28 de enero de 2003 o

cuando se termine el caso, lo que ocurra primero.

b) De ganarse el caso diez mil dólares (10,000.00) de declararse No Ha Lugar la demanda yendo a juicio.

c) Sobre la Demanda contra Tercero se cobrará el 33% de lo que se obtenga. Una vez hecho cualquier depósito, el mismo no será reembolsable.

5. Los allí demandados y aquí quejosos pagaron al licenciado Vélez Lugo la suma de tres mil (3,000.00) dólares el veinticinco de enero de 2002. Luego, pagaron la suma de quinientos (500.00) dólares el 30 de mayo de 2003 y posteriormente pagaron el remanente hasta cinco mil dólares.

6. El caso fue señalado para vista en su fondo para el 30 de noviembre de 2004.

7. El 4 de octubre de 2004, la parte demandante en el caso presentó una moción solicitando el desistimiento con perjuicio. Esta moción fue notificada al licenciado Vélez Lugo, como abogado de los demandados.

8. En la fecha señalada para vista en su fondo, las partes se reunieron en cámara y el querellado informó al tribunal que había aceptado lo propuesto por la parte demandante, dando fin al pleito. Expuso, además, que se había acordado entre las partes que el desistimiento fuese "en cadena".

9. Solicitó, en adición, el licenciado Vélez Lugo del foro de instancia durante la conversación en cámara, que lo anterior debía verterse para el record para que fuese ratificado por las partes y así evitar reclamaciones futuras, a lo cual el tribunal accedió.

10. El licenciado Vélez Lugo interrogó en sala con tal propósito, tanto al señor Ramírez Toro como la señora Pérez Morales. Las preguntas giraron a torno a ratificar lo informado por los abogados en cámara en cuanto al desistimiento del caso.

11. Los demás abogados en el caso se limitaron a vertir (sic) para el record estar de acuerdo

con el desistimiento con perjuicio de sus respectivas causas de acción.

12. No declaró ningún testigo ni hubo presentación de prueba alguna ese día.

13. Posteriormente el foro de instancia dictó la sentencia desestimando con perjuicio todas y cada [una] de las causas de acción que existían en el pleito, en consideración al hecho de que la parte demandante había desistido con perjuicio y así también había hecho la parte demandada con sus causas de acción.

14. Dicha sentencia fue notificada el 16 de diciembre de 2004. El 13 de enero de 2004, el querellado le escribió a sus clientes una carta dirigida al señor Ramírez Toro aludiendo a la referida sentencia y reclamándoles la suma de diez mil (10,000.00) dólares, expondíéndoles (sic) que ello era así "debido a que conforme a los términos y condiciones de la misma, la cual pueden cotejar, el caso de referencia terminó a su favor".

15. Con anterioridad a esta carta, ya el querellado le había requerido el pago a los quejosos mediante otra carta de fecha 10 de noviembre de 2004, en la cual les requería la suma de trece mil (13,000.00) dólares de honorarios de abogado. Para la referida fecha aún no se había celebrado la vista en su fondo y no se sabía la disposición final que tendría el caso.

16. En respuesta a la carta del 13 de enero de 2004, el señor Ramírez Soto le contestó al querellado mediante carta de fecha 22 de enero de 2005, que la obligación de pagar los diez mil (10,000.00) dólares adicionales era sólo si ganaba el pleito en un juicio en su fondo, lo cual no había ocurrido en este caso.

17. El señor Ramírez Soto le recordó, además, al querellado que en el caso no hubo juicio en su fondo, ya que previo a la vista final las partes firmaron una estipulación, por lo que la misma sólo sirvió para consignar la aceptación del acuerdo entre todos. Advirtió, que ante ello no se trataba de un juicio plenario donde había que presentar testigos, sino que previamente se conocía el resultado del mismo.

18. El querellado presentó una demanda en cobro de dinero en contra de sus clientes en el Tribunal de Primera Instancia, Sala Superior de San Germán, Civil Núm. 13C1200500170, el 8 de marzo de 2005.

19. El Tribunal de Primera Instancia celebró el juicio en sus méritos y dictó sentencia el 11 de agosto de 2006, declarando sin lugar dicha demanda, sin costas ni honorarios de abogado.

20. Dicho foro, luego de analizar los hechos y el derecho vigente sobre la materia, particularmente el concepto y alcance de lo que es un juicio en los méritos, concluyó que en el caso IDP2002-001 no se celebró un juicio en los méritos.

21. Determinó el referido tribunal, entre otras cosas, que a los únicos efectos que se celebró la vista del día 30 de noviembre de 2004, en el caso IDP2002-001 fue para ratificar para el record la aceptación de la transacción propuesta por la parte demandante.

22. Expuso, además, que en dicha vista no hubo desfile de prueba, ni testigos, ni interrogatorios, ni presentación de evidencia testifical o documental en apoyo a las alegaciones de las partes. Por lo tanto, concluyó, que el caso no se ganó, ni se declaró sin lugar la demanda, una vez celebrada la vista en su fondo.

23. Concluyó, en adición, que tampoco el tribunal tuvo que decidir conforme a la prueba presentada, sino que lo que hizo fue aprobar las mociones de desistimiento con perjuicios radicadas por todas las partes envueltas en el juicio.

24. Resolvió el tribunal que el licenciado Vélez Lugo cobró la suma de cinco mil (5,000.00) dólares que fue pactada por escrito y que no habiendo llegado a la etapa de juicio en su fondo, el querellado no podía exigir la aplicación del inciso (b), antes citado, del contrato de servicios profesionales en controversia. Expresó que la sentencia en el caso IDP2002-001 lo que hizo fue recoger los planteamientos de las partes y darle la aprobación al desistimiento de sus mutuas reclamaciones.

25. Determinó, además, que si el licenciado Vélez Lugo quería incluir la desestimación o desistimiento voluntario como parte de sus honorarios de abogado, debió así hacerlo constar en el contrato de servicios profesionales.

26. No conforme con dicha sentencia, el querellado recurrió al Tribunal de Apelaciones, confirmando dicho foro al de instancia, mediante sentencia de 31 de octubre de 2006, (KLAN200601172).

27. En su análisis, el Tribunal de Apelaciones expresó que el licenciado Vélez Lugo pretendía que dicho foro catalogara "la simple celebración de una vista para ratificar y vertir (sic) para "record" un desistimiento con perjuicio, como el acto del juicio".

28. Concluyó el foro apelativo que en principio la mencionada vista fue innecesaria, toda vez que el desistimiento del juicio [de la demanda] fue uno con perjuicio, el cual opera como una adjudicación en los méritos, por lo que, dentro de este escenario, no existe vencedor ni vencido ya que la controversia "murió" por decisión del promovente.

29. Resolvió finalmente que no se podía permitir que la celebración de dicha vista fuese utilizada como subterfugio para el cobro de honorarios, bajo los parámetros señalados. Ante ello, confirmó la sentencia del foro de instancia y le impuso las costas del pleito al licenciado Vélez Lugo, así como dos mil (2,000.00) dólares de honorarios de abogado a favor de los esposos Ramírez Pérez.

30. Inconforme con dicha sentencia, el licenciado Vélez Lugo recurrió al Tribunal Supremo. Este Honorable Tribunal dispuso mediante Resolución de 9 de febrero de 2007, "a la petición de certiorari, no ha lugar".

31. Durante el procedimiento disciplinario, ambas partes estuvieron de acuerdo en que no existe controversia en cuanto a los hechos, según surge del contenido de los expedientes estipulados.

32. También se estipuló que la controversia real consiste en si hubo o no violaciones éticas

que se imputan al querellado a la luz de los hechos procesales estipulados.

Evaluados estos hechos, y conforme reseñado, la Comisionada Especial determinó que el licenciado Vélez Lugo incurrió en conducta violatoria a los Cánones 24, 25 y 38 de los de Ética Profesional.

Sometido el caso ante nuestra consideración, y contando con el beneficio del Informe de la Comisionada Especial y del Procurador General, así como la contestación del licenciado Vélez Lugo, resolvemos.

## II

Reiteradamente hemos señalado que los Cánones de Ética Profesional establecen las normas mínimas de conducta que rigen a los miembros de la profesión legal en el desempeño de su delicada e importante labor. *In re Acevedo Álvarez*, res. en 20 de abril de 2010, 178 D.P.R.\_\_\_ (2010), 2010 T.S.P.R. 74, 2000 J.T.S. 83; *In re Pujol Thompson,* 171 D.P.R. 683 (2007); *In re Izquierdo Stella*, 154 D.P.R. 732 (2001); *In re Matos González*, 149 D.P.R. 817 (1999); *In re Filardi Guzmán*, 144 D.P.R. 710 (1998).

De igual manera, en nuestra jurisdicción, está firmemente establecido que el contrato de servicios legales es un contrato *sui generis* ya que, aunque se trata de un contrato de arrendamiento de servicios al amparo del Art. 1473 del Código Civil, 31 L.P.R.A. sec. 4111, está regido por las consideraciones éticas relativas a la profesión legal. *In re Delannoy Solé*, 172 D.P.R. 95 (2007); *Nassar*

*Rizek v. Hernández*, 123 D.P.R. 360 (1989); *Méndez v. Morales*, 142 D.P.R. 26 (1996).

En particular, hemos sido consistentes al enfatizar que al iniciar una gestión profesional, todo abogado debe tener presente lo establecido en el Canon 24 de Ética Profesional, 4 L.P.R.A. Ap. IX C.24, que contiene todas las normas relativas a la fijación de honorarios de abogado.

Sobre el particular, dicho Canon establece expresamente que la fijación de honorarios profesionales deberá regirse por el principio de que la profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro. *In re Díaz Lamoutte*, 106 D.P.R. 450 (1977). Tan es así, que dicho Canon recomienda que el abogado y el futuro cliente lleguen a un acuerdo sobre los honorarios por servicios profesionales al inicio de la relación profesional y que éste sea reducido a escrito.  Canon 24 de Ética Profesional, *supra*.

A su vez, el Canon 24 de Ética Profesional, *supra*, señala los aspectos que se consideran al momento de fijar los honorarios de los abogados. Entre éstos se encuentran la naturaleza de la gestión, la novedad y la dificultad del asunto a resolver, la habilidad y el conocimiento necesario para conducir el caso adecuadamente, el tiempo y trabajo requerido, los honorarios que se acostumbran a cobrar por servicios similares, la cuantía envuelta, la contingencia o certeza de la compensación, y la naturaleza de la gestión profesional, entre otros. *In re García* Ortiz, res. en 10 de

junio de 2009, 176 D.P.R.___ (2009), 2009 T.S.P.R. 110, 2009 J.T.S. 113; *In re Ayala Oquendo*, 166 D.P.R. 587 (2005).

Por otro lado, el Canon 25 de Ética Profesional, 4 L.P.R.A. Ap. IX C.25, dispone que las controversias de los abogados con sus clientes, con respecto a la compensación por su trabajo, deben evitarse por el abogado en todo lo que sea compatible con el respeto a sí mismo y con el derecho que tenga a recibir una compensación razonable por los servicios prestados. *In re Meléndez Figueroa*, 166 D.P.R. 199 (2005). Por otro lado, el abogado tiene derecho a recibir una compensación razonable por los servicios que rinde a sus clientes. *Pérez v. Col. Cirujanos Dentistas,* 131 D.P.R. 545 (1992)*; Rodríguez v. Ward*, 74 D.P.R. 880 (1953). En específico en *Nassar Rizek v. Hernández*, supra, pág. 373, dijimos entonces que, "[l]o expuesto tiene como contraparte el derecho del abogado a recibir como profesional una compensación razonable por sus servicios... Como corolario, el abogado está facultado a entablar aquellas reclamaciones judiciales necesarias para el cobro de sus honorarios, aunque cautelarmente, el mismo canon señala que "debe evitarse", a no ser que se presenten únicamente para impedir injusticias, imposiciones o fraudes". *In re Merced Montañez*, 164 D.P.R. 678 (2005); *Pérez v. Col. Cirujanos Dentistas,* supra*.*

Por otro lado, hemos resuelto que el Canon 38 de Ética Profesional le exige a todo abogado conducirse en forma que

exalte la dignidad y el honor de su profesión. 4 L.P.R.A. Ap. IX, C.38. Según el propio canon, ello responde a la confianza depositada en el abogado como miembro de la ilustre profesión legal. *In re Sepúlveda, Casiano*, 155 D.P.R. 193 (2001).

Reiteradamente, al interpretar el referido precepto, hemos expresado que cada abogado es un espejo en el cual se refleja la imagen de la profesión, por lo que debe actuar, tanto en su vida profesional como en su vida privada, con limpieza, lealtad y el más escrupuloso sentido de responsabilidad. *In re García Aguirre*, res. el 2 de febrero de 2009, 175 D.P.R. ___ (2009), 2009 T.S.P.R. 21, 2009 J.T.S. 24; *In re Coll Pujols,* 102 D.P.R. 313 (1974).

La Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, establece que le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. Por lo tanto, sus determinaciones fácticas merecen nuestra mayor deferencia. Ahora bien, de igual manera hemos resuelto que, aunque este Tribunal no está obligado a aceptar el Informe del Comisionado Especial nombrado para atender una querella contra un abogado, pudiendo adoptar, modificar o rechazar tal Informe, de ordinario sostenemos las conclusiones de hecho de un Comisionado Especial salvo que se demuestre prejuicio, parcialidad o error manifiesto. *In re Gordon Menéndez I*, 171 D.P.R. 210 (2007); *In re Moreira Avillán*, 147 D.P.R. 78

(1998); *In re Soto López*, 135 D.P.R. 642 (1994); *In re Morales Soto*, 134 D.P.R. 1012 (1994).

Con estos preceptos en mente, atendemos la controversia ante nuestra consideración.

## III

El primer cargo de la Querella le imputa al licenciado Vélez Lugo haber actuado contrario al Canon 24 de Ética Profesional, *supra*, al desplegar una conducta contraria a los postulados establecidos que disponen que la profesión legal no es un mero negocio con fines de lucro, dado que es parte integral de la administración de la justicia, por lo que ningún abogado deberá estimar sus servicios en más ni menos de lo que realmente valen. La Comisionada Especial determinó que del análisis de la totalidad de las circunstancias surgía, de manera clara, que la vista final efectuada en el caso IDP2002-001 fue indebidamente utilizada para justificar lo que a todas luces fue un cobro indebido de honorarios de abogados.

En cuanto al segundo cargo, se le imputa al licenciado Vélez Lugo incurrir en conducta violatoria del Canon 25 de Ética Profesional al entablar una demanda contra sus clientes por honorarios de abogado cuando la misma no procedía y atentaba directamente contra el deber de lealtad absoluta que le debe todo abogado a sus clientes. Sobre este cargo la Comisionada Especial informa que la prueba desfilada revela la violación de dicho canon. La Demanda interpuesta por el licenciado Vélez Lugo no tuvo el

propósito de evitar una injusticia, una imposición o un fraude, ya que claramente tales honorarios no procedían si el caso IDP2002-001 no era resuelto en los méritos, como en efecto no lo fue. El licenciado Vélez Lugo, conforme determinó la Comisionada Especial, no tenía derecho a recibir esos honorarios porque las partes en el mencionado caso desistieron con perjuicio de sus mutuas reclamaciones y el caso no se vio en los méritos. En conclusión, la Comisionada Especial entiende que siendo ello así, precisamente lo injusto fue la demanda del querellado en contra de los quejosos en cobro de honorarios que evidentemente no procedían.

En el Cargo III se le imputó al licenciado Vélez Lugo conducta violatoria del Canon 38 de Ética Profesional al tratar de obtener el pago de honorarios de abogado que no procedían, entablando para ello Demanda contra sus clientes. Esta conducta atenta, a su vez, contra el deber que tiene todo abogado de exaltar el honor y la dignidad de la profesión. La Comisionada Especial apunta que las actuaciones del licenciado Vélez Lugo, sostenidas por la prueba, presentan una conducta impropia y poco digna de un abogado.

En su *Réplica a Informe de la Comisionada Especial* el licenciado Vélez Lugo señala que en raras ocasiones suscribe contratos con sus clientes ya que siempre ha

confiado en la palabra de ellos.[3] Indica que debido a lo anterior sólo ha instado de cuatro (4) a seis (6) Demandas por cobro de dinero durante su práctica y éstas han sido presentadas contra corporaciones. Apunta:

> …entendíamos y estábamos convencidos, como lo estamos, de que se nos adeudaban los $10,000.00… El contrato en controversia se hizo a instancias de la parte querellante y en el mismo se estableció que eran $5,000.00 en adición a $10,000.00 del caso llegar a juicio y resultar la parte querellada victoriosa por el resultado del mismo, y eso era lo que entendíamos nosotros, y cuando el caso, que fue ciertamente señalado para juicio llegar a la fecha del juicio y allí las partes desistieron y el Tribunal aprobó eso, eso es un resultado positivo para la parte querellante y se hizo en el día del señalamiento de juicio, entendíamos que nos daba derecho a cobrar los honorarios de abogado pactados y utilizamos los medios que la ley nos provee para la interpretación de un contrato y sus cláusulas, que es asistir al Tribunal y así lo hicimos.

Plantea que nunca utilizó un método que fuera ilegal para tratar de cobrar los honorarios de abogado. Por último, solicitó excusas a los querellantes y reiteró que trató de ejercer lo que estaba convencido que era su posición correcta.

No podemos aceptar las alegaciones del licenciado Vélez Lugo. Comencemos señalando que del Contrato de Servicios Profesionales se colige que la intención de las partes era establecer que de ir a juicio y de resultar

---

[3] Esta conducta hace abstracción total de nuestros pronunciamientos sobre el particular. Reiteradamente hemos sostenido que, al iniciar su gestión profesional, todo abogado debe tomar en consideración lo que el referido canon dispone a los efectos de que es deseable que se llegue a un acuerdo sobre los honorarios a ser cobrados por el abogado al inicio de la relación profesional y que dicho acuerdo sea reducido a escrito para evitar que se susciten malentendidos entre el cliente y su abogado. *In re García Ortiz*, res. en 10 de junio de 2009, 176 D.P.R.___ (2009), 2009 T.S.P.R. 110, 2009 J.T.S. 113.

victoriosos los quejosos, vendrían obligados a pagar la cantidad de diez mil (10,000.00) al licenciado Vélez Lugo.

Del tracto procesal del caso se deprende que el 4 de octubre de 2004, la parte demandante en el caso IDP2002-001 presentó una moción solicitando desistimiento con perjuicio la cual fue notificada al licenciado Vélez Lugo. A estos efectos, el 18 de octubre de 2004 el licenciado Vélez Lugo instó un escrito peticionándole al Tribunal de Primera Instancia que aceptara el desistimiento con perjuicio **y dejara en efecto la vista evidenciaria.**

El 10 de noviembre de 2004 el licenciado Vélez Lugo remitió una misiva a los querellantes reclamándoles el pago de trece mil (13,000.00) dólares por concepto de honorarios de abogados.

El 30 de noviembre de 2004, reunidos en cámara, el Tribunal manifestó que estaba pendiente el disponer sobre la moción radicada por la parte demandante solicitando desistimiento con perjuicio y moción presentada por el licenciado Vélez Lugo. Durante la reunión, el licenciado Vélez Lugo informó al Tribunal de Primera Instancia que los querellantes habían aceptado la transacción y que las partes habían acordado que el desistimiento fuese en cadena, por lo que solicitó la celebración de la vista para que el acuerdo fuese ratificado por las partes y se vertiera para "record" y de esta forma se evitaran reclamaciones futuras. Lo anterior a pesar de que tenía

conocimiento que la solicitud de desistimiento con perjuicio de la parte demandante ponía fin al pleito.

El Tribunal celebró la vista en la cual testificaron únicamente los esposos Ramírez Pérez quienes fueron interrogados por el licenciado Vélez Lugo, ningún otro abogado hizo preguntas. Tampoco se presentó prueba alguna.

Así las cosas, el licenciado Vélez Lugo envió nuevamente una carta a los querellantes en la que reclamaba el pago de los diez mil (10,000.00) dólares. Los querellantes contestaron la misiva del licenciado Vélez Lugo indicándole que los diez mil (10,000.00) dólares eran exigibles sólo si se ganaba el pleito en un juicio en su fondo.

Ante este escenario el licenciado Vélez Lugo procedió a demandar a los querellantes, acción que no procedía.

De lo antes reseñado se desprende que el caso de los querellantes pudo resolverse sin la celebración de la vista de 30 de noviembre de 2004, dado que la parte demandante en el caso IDP2002-001 había peticionado el desistimiento con perjuicio el 4 de octubre de 2004. El tracto procesal del caso revela de manera meridiana que la vista en el caso IDP2002-001 fue celebrada a petición del licenciado Vélez Lugo. Como abogado el licenciado Vélez Lugo debía conocer que en dicha vista no se llevarían a cabo procesos que identifican con una vista en su fondo, por lo que era claro que la cláusula contractual relativa a los diez mil (10,000.00) dólares no aplicaría. Cabe apuntar que el

licenciado Vélez Lugo había reclamado a los querellantes la suma de trece mil (13,000.00) dólares el 10 de noviembre de 2004 **sin haberse celebrado aún la vista y sin conocerse la disposición final del caso. Ahora bien, surge de autos que desde el 3 de noviembre de 2004, el licenciado Vélez Lugo tenía conocimiento de la solicitud de desistimiento con perjuicio instada por la parte demandante. Estas actuaciones del licenciado Vélez Lugo *a prima facie* son preocupantes.**

Interesante por demás es comparar estas actuaciones con lo siguiente. Surge de la Contestación del licenciado Vélez Lugo a la Queja lo siguiente:

> Que el caso sobre daños y perjuicios mencionado en el párrafo anterior estuvo en trámite judicial durante el término del 3 de enero del 2002 - que se radicó la demanda –hasta el 30 de noviembre del 2005- **que se celebró el juicio-** y fue objeto de descubrimiento de prueba mediante deposiciones e interrogatorios entre las partes y hubo reconvención y demanda contra tercero.
>
> …
>
> **Días antes de juicio del caso IDP20020001, el Lcdo. Nelson Vélez Lugo citó a los aquí demandados para prepararse para el juicio y les solicitó que se prepararan para el pago de $10,000.00…**
>
> El compromiso contraído en la relación contractual de las partes, el querellado, Lcdo. Nelson Vélez Lugo los representó, **el caso fue a juicio en su fondo y los demandados no pagaron un solo centavo de la reclamación contra ellos.** (Énfasis suplido)

Examinemos las contradicciones. El licenciado Vélez Lugo, en un principio, planteó que **días antes de la vista** se reunió con los quejosos para prepararlos para el

"juicio", a celebrarse el 30 de noviembre de 2004. Sin embargo, desde el 4 de octubre de 2004, casi dos (2) meses antes de dicha vista, el licenciado Vélez Lugo tenía conocimiento de la moción instada por la parte demandante peticionando el desistimiento con perjuicio. ¿Qué motivación tuvo el licenciado Vélez Lugo para dicho curso de acción? Sus propias alegaciones intiman la respuesta a saber, "que el caso fue "objeto de descubrimiento de prueba mediante deposiciones e interrogatorios entre las partes y hubo reconvención y demanda contra tercero".

Si el licenciado Vélez Lugo quería incluir la desestimación o desistimiento voluntario como parte de sus honorarios de abogado, debió hacerlo constar. Hemos resuelto que en aquellos casos en que no sea anticipable de un todo al inicio de la gestión profesional la extensión y valor de los honorarios, el abogado deberá reducir por escrito el acuerdo con la mayor claridad en sus términos, libre de ambigüedades y haciendo constar las contingencias previsibles que pudieran surgir durante el transcurso del pleito o del asunto que se atiende a nombre del cliente. *Pérez v. Col. Cirujanos Dentistas,* supra.

En resumen, la vista del 30 de noviembre de 2004, no puede invocarse a fin de poder cobrar los diez mil (10,000.00) dólares de honorarios de abogado que debía recibir de haberse resuelto el caso, luego de una vista en su fondo. El licenciado Vélez Lugo sabía y conocía de la moción de desistimiento desde casi dos meses antes de la

vista celebrada el 30 de noviembre de 2004. Por ello sus reclamos de honorarios al amparo del Contrato de Servicios Profesionales suscrito fueron altamente temerarios y aún más instar una acción indebida en cobro de dinero contra los quejosos. Sabía que el desenlace del caso no fue resultado de prevalecer tras una vista en su fondo.

Según dispone nuestro Reglamento le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. Al desempeñar una función similar al juzgador de instancia, el Comisionado Especial se encuentra en mejor posición para aquilatar la prueba testifical y adjudicar credibilidad, por lo que sus determinaciones fácticas merecen nuestra mayor deferencia. *In re Rivera Lozada*, res. en 26 de junio de 2009, 176 D.P.R. ___ (2009), 2009 T.S.P.R. 120, 2009 J.T.S. 123.

En el caso de autos no se nos ha demostrado prejuicio, parcialidad o error manifiesto por lo que no habremos de intervenir.

Conforme hemos apuntado "la transparencia de las relaciones entre abogado cliente y la naturaleza fiduciaria de dicha relación basada en honestidad absoluta es piedra angular para nuestro sistema jurídico. Por esta razón, reiteradamente hemos establecido que los abogados no deben cobrar indebidamente los honorarios de abogado…". *In re Bonilla Berlingeri*, res. en 29 de abril de 2009, 175 D.P.R.___ (2009), 2009 T.S.P.R. 72, 2009 J.T.S. 75.

Ante los hechos expuestos y la falta de evidencia en el expediente que rebata lo anterior resolvemos que el licenciado Vélez Lugo incurrió en violaciones a los Cánones 24, 25 y 38 de Ética Profesional.

**IV**

Por los fundamentos antes expresados, suspendemos por tres (3) meses al licenciado Vélez Lugo del ejercicio de la abogacía a partir de la notificación de la presente Opinión *Per Curiam*.

El licenciado Vélez Lugo tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajos no realizados. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Lcdo. Nelson Vélez Lugo

CP-2007-14

SENTENCIA

San Juan, Puerto Rico, a 28 de febrero de 2011.

Por los fundamentos antes expresados, suspendemos por tres (3) meses al licenciado Vélez Lugo del ejercicio de la abogacía a partir de la notificación de la presente Opinión *Per Curiam*.

El licenciado Vélez Lugo tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajos no realizados. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo